627 So.2d 321 (1993)
James A. McNEESE
v.
COOPER TIRE AND RUBBER COMPANY (Self-Insured).
No. 91-CC-1042.
Supreme Court of Mississippi.
October 7, 1993.
Rehearing Denied December 23, 1993.
*322 J. Dudley Williams, Aberdeen, for appellant.
Dennis W. Voge, Stephen H. Morris, Mitchell Voge Beasley & Corgan, Tupelo, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
SMITH, Justice, for the Court:
This is an appeal from an order of the Lee County Circuit Court affirming an order of the full Workers' Compensation Commission. The administrative judge found McNeese had suffered an accidental injury resulting in compensable, temporary total disability from May 7 to May 18, 1988. The judge further determined McNeese had suffered a permanent disability, but found this attributable entirely to a preexisting condition, and thus denied permanent disability benefits. Because we are forced to conclude that the decision to deny appellant permanent disability benefits was not supported by substantial evidence, we reverse and remand.

FACTS
McNeese was injured performing his duties as a tire builder specialist. Cooper Tire, McNeese's employer, admitted a temporary disability from May 8 to May 19, 1988, for which benefits were paid. Cooper Tire denied any permanent disability or loss of earning capacity and averred, in the alternative, that McNeese suffered a preexisting condition which was the sole cause of any permanent disability.

THE HEARING
The evidence showed McNeese was a twenty-five year old white male, with a high school education. Prior to working for Cooper Tire, McNeese worked in the furniture industry as an arm builder and was a crew supervisor. McNeese testified he was working the evening shift at Cooper Tire, loading a roll of steel at shoulder level, when he noticed his "back popped." As he prepared to go to bed, he had difficulty getting off the couch, and the next morning was unable to get out of bed. He remained in bed until it was time for his next shift.
Once at work McNeese attempted to load a roll of steel, but collapsed onto the floor and told his supervisor he could not stand the pain. McNeese sought medical assistance, first from the company doctor who placed no work restrictions on him, and later that same day from Dr. Benjamin Buchanan at the North Mississippi Medical Center emergency room. There he was hospitalized for one week by Dr. Buchanan, then remained home for a second week, and was released to return to work on "permanent light duty status."
Prior to his injury, McNeese worked a "level three" job with a pay rate of $410.00 per week. After his injury, McNeese worked a light duty, "level one" job testing raw materials in a laboratory and received $380.00 per week. McNeese worked the latter job until he was terminated on April 7, 1989. Work restrictions placed by Dr. Buchanan included no bending, stooping, or repetitive lifting of over 25 pounds. McNeese stated his light duty job basically conformed to those restrictions, although it did involve a lot of walking, standing and slinging of a ten-pound hammer.
On April 4, 1989, McNeese sought further medical attention concerning his continued back pain from Dr. Donald Cook of Meridian, Mississippi. Dr. Cook placed additional work restrictions including no repetitive bending or slinging of the hammer, and limited the amount of walking McNeese could do. McNeese turned this list of restrictions over to his supervisor and inquired whether there were any tasks he could do which did not involved slinging a hammer, which McNeese estimated he did over 500 times per shift. McNeese testified his supervisor told him to "keep right on working," that he could use scissors instead of a hammer to cut the rubber samples.
McNeese reported no further problems until three (3) days later, on April 7, 1989, when two supervisors met with him. According to McNeese, he was told with his restrictions being so strict, that by the letter he was "just totally disabled" and there was no work for him to do. At the conclusion of the meeting, *323 McNeese stated he was told there was no job he could do, that he was being terminated, and "if I didn't understand that, I was just being fired." McNeese was told he should apply for and would probably get long-term disability.
McNeese testified he had worked in the laboratory 9 or 10 months without missing any days and did his own job plus extra work. He stated no one complained about his work; rather, he was told he was doing a good job.
Joe Bailey, laboratory supervisor at Cooper Tire, testified McNeese did his job correctly, was always on time and was a good worker and employee. He stated there were no problems with the quality of McNeese's work. He testified that McNeese continued to complain of back pain, but continued to show up and do his work the best he could. Bailey testified McNeese was fired because "based on the restrictions that Dr. Cook gave him, he could no longer do the job."
The testimony of three (3) physicians was taken by deposition. Dr. Donald Cook, orthopaedic specialist, first examined McNeese one year after his injury. He diagnosed McNeese with having a "spondylolisthesis, developmental, with traumatic aggravation." Dr. Cook stated his diagnosis was identical with that of Dr. Buchanan, and his restrictions for McNeese were on activities which placed significant stress to the lower back. In other words, Dr. Cook recommended light duty work. It was Dr. Cook's opinion that McNeese had a 17% medical impairment; after subtracting for the preexisting spondylolisthesis condition, Dr. Cook arrived at a net result of a 9% medical impairment of function of the total body attributable to the injury. Dr. Cook testified that he did not believe surgery would be of benefit to McNeese and that everything medically possible had been done for McNeese. Dr. Cook concluded that he could not give a reliable opinion as to when McNeese had reached maximum medical recovery.
Upon cross-examination, Dr. Cook explained that spondylolisthesis is a condition which results from stress fractures to the spine, usually developing during a person's growth years and ending in the early teen years. Dr. Cook stated that most of the time the person is not aware of the condition or aware that it develops. Dr. Cook further testified that the spondylolisthesis was preexisting in McNeese in that his pre-employment x-rays showed defects in the spine, but no slippage appeared. The slippage was only apparent later, and Dr. Cook could not say whether it was due to an injury or whether it developed gradually. Dr. Cook testified that McNeese was asymptomatic up to the point of his injury.
Dr. James E. Crowder, clinical psychologist, testified that he met with McNeese and performed vocational and personality tests. It was Crowder's opinion that McNeese was 100% disabled from doing his past type of work activity due to his injury, which would also prevent him from performing approximately 65% of the jobs he is capable of performing. Crowder testified research indicated "a hiring bias against people who have a history of back injury, ... especially people who have evidence of continuing limitations." Crowder found no evidence of malingering on McNeese's part. He stated that based on the testimony that McNeese was well able to perform his job duties, it was possible, even probable that he was fired for filing a workers' compensation claim.
Dr. Benjamin H. Buchanan stated he examined McNeese the day after his injury and a bone scan revealed normal results. He stated the spondylolisthesis was a chronic or old back injury. His recommendation was for McNeese to be placed on permanent light duty status, with limited repetitive lifting of over 25 pounds and repetitive bending or stooping. On a follow-up visit six (6) weeks later, Dr. Buchanan noted no complaints or problems with McNeese's "lab-type job." He had some question as to whether McNeese's spinal condition existed prior to his employment, despite preemployment radiology reports to the contrary. Buchanan saw no reason McNeese could not perform the tasks required for the laboratory job. It was Dr. Buchanan's opinion that McNeese had a 10% impairment attributable to his preexisting spondylolisthesis. He stated that McNeese's injury did not cause or contribute to his back *324 condition other than possibly "bringing it to light."
Dr. Buchanan testified that McNeese's back condition may have been dormant prior to his injury, but also stated "as a matter of fact, as a physician, I can't tell you exactly when that defect occurred." Buchanan concluded that McNeese's acute back strain was a work-related injury, but the spondylolisthesis with slippage, or spinal cracks, according to a negative bone scan, were either "of old age or of at least congenital predisposition."
The administrative judge found that McNeese suffered a back strain as a result of his accidental injury, causing him to be temporarily totally disabled for a period of ten days thereafter. Further, the judge found McNeese sustained a percentage of permanent disability, but that said disability was entirely as a result of McNeese's preexisting spondylolisthesis; therefore, no permanent disability or loss of wage-earning capacity was indicated.
Feeling aggrieved, McNeese appeals to this Court with two assignments of error, one of which has merit:
I. WHETHER OR NOT THE CIRCUIT COURT ERRED IN ITS ORDER AFFIRMING THE DECISION OF THE FULL WORKERS' COMPENSATION COMMISSION WHEN THE ORDERS OF THE FULL COMMISSION ENTERED IN THIS CAUSE ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND THE LAWS OF THIS STATE.

LAW
McNeese submits before this Court that the findings and decision of the administrative judge, adopted by the Commission, were not supported by substantial evidence. McNeese states the undisputed facts were that: (1) he suffered from a preexisting spondylolisthesis condition; however, it was never determined when the slippage occurred, (2) prior to his accident McNeese suffered no loss of wage earning capacity and performed heavy-duty manual labor without restriction, (3) McNeese's physician linked his disability causally to his injury, and (4) Cooper Tire's physician testified that McNeese's injury may have brought his disability to light and the preexisting defect may have been dormant prior to the day of his injury.
The testimony of both treating physicians, Dr. Buchanan and Dr. Cook is substantially similar with the exception of the cause of McNeese's permanent disability. The administrative judge chose to lend more weight to the testimony of Dr. Buchanan as he was the primary treating physician. Dr. Buchanan assigned a 10% disability attributable solely to McNeese's preexisting condition. Dr. Cook, after reaching the same diagnosis and placing similar work restrictions, assigned a 17% disability after which a percentage for the spondylolisthesis was subtracted, resulting in a net result of a 9% disability attributable to the injury. Both physicians placed McNeese on permanent light duty work status.
This Court has stated with respect to the effect of preexisting conditions in the determination of disability benefits following a work-related injury:
The rule in this State is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. A corollary to the rule just stated is that when the effects of the injury has subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.
Rathborne, Hair & Ridgeway Box Co. v. Green, 237 Miss. 588, 594, 115 So.2d 674, 676 (1959).
Cooper Tire contends that the corollary to the Rathborne rule was correctly applied in McNeese's case to deny permanent disability benefits. As support, the company cites the opinion of Dr. Buchanan that McNeese reached maximum recovery on or before July 29, 1988, and that any remaining disability was attributable solely to the preexisting spondylolisthesis.
Bolton v. Catalytic Construction Company, 309 So.2d 167 (Miss. 1975), presented an *325 analogous factual situation. The claimant had worked for years performing heavy-duty labor and testified he had experienced no back problems until his on-the-job injury. Thereafter, he could not do his prior work and worked only irregularly doing light duty tasks. In that case, the order of the Workers' Compensation Commission allowed temporary disability benefits for approximately 2 weeks, but denied permanent benefits. Two physicians were of the opinion that the claimant was disabled from a congenital defect of the spine, prior to his injury. The employer argued before this Court that the corollary to the Rathborne rule applied and permanent benefits were properly denied. This Court stated:
The conclusion of Doctors Allison and Moore that claimant was disabled in a medical sense before his injury from performing heavy manual labor requiring bending, stooping and lifting because of the presence of a sixth lumbar vertebra does not alter the undisputed fact that, functionally, claimant performed heavy manual labor effectively with no discomfort before his injury in 1969. He earned wages and engaged in strenuous exertions required by his various vocations, all without any discomfort or apparent disability. Claimant was fully able to perform his normal duties until the time of the accident and was, at least, partially disabled to do so thereafter.
Id. at 171-72.
The Court noted both the Rathborne rule and its corollary, but reversed the decision of the Commission to deny permanent disability benefits. The Court concluded:
Where one enjoys functional ability to perform his work in spite of an existing congenital defect and suffers an injury which aggravates the existing congenital defect, thereafter causing a loss of his functional ability, then as long as the functional loss continues the corollary to the Rathborne rule will not apply as a bar to compensation. Simply stated, when an injury causes loss of functional ability, it is compensable.
Id. at 172.
Cooper Tire notes the Bolton case, but attempts to distinguish the case sub judice by arguing that the claimant in Bolton was a productive employee prior to his injury, but unable to work afterward. In contrast, the company submits McNeese returned to work two weeks after his injury and "was productively employed for almost eleven months thereafter." Cooper Tire contends further that both doctors agreed there was no medical reason McNeese could not continue doing his work.
Cooper Tire takes an inconsistent position in arguing both that McNeese is not entitled to disability benefits and suffered no loss of wage earning capacity because he was able to work following his injury, but in firing him because, based on work restrictions, "he could no longer do the job." Clearly ignored is testimony by McNeese, corroborated by his supervisor, that McNeese continued to complain of back pain while doing his job, and that the job McNeese was doing following his injury was a light-duty job, two levels below his former position and with less pay.
In Jordan v. Hercules, 600 So.2d 179, 183 (Miss. 1992), we defined disability as "incapacity because of injury to earn wages which the employee was earning at the time of injury in the same or other employment." We further explained how the burden of showing a disability shifts from the employee to the employer when the employer refuses to rehire the employee. We stated:
Where there is a finding of permanent partial disability, the claimant bears the burden of making a prima facie showing that he has sought and has been unable to find work "in the same or other employment" pursuant to Miss. Code Ann. Section 71-3-3(i). (Emphasis added) Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss. 1980). When the claimant, having reached maximum medical recovery, reports back to his employer for work, and the employer refuses to reinstate or rehire him, then it is prima facie that the claimant has met his burden of showing total disability. The burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage earning capacity.
*326 The medical evidence indicates that the evaluations and diagnoses of Doctors Buchanan and Cook were nearly identical except with respect to their differing opinions, crucial in this case, of whether McNeese's final disability was attributable to his preexisting condition or to his work injury, or both.
Dr. Cook attributed McNeese's disability to both the injury and the spondylolisthesis. He stated:
It is medically probable that he [McNeese] would have been able to continue functioning in his usual capacity had he not sustained an injury. After the injury, he continued to experience severe pain, precluding return to occupation classified as heavy-duty manual labor. Therefore, in my opinion and based on medical probability, the injury would be causative of the necessity of change... .
Dr. Cook further testified that McNeese's preemployment x-rays showed defects in his spine, but no slippage, or cracks. He stated the slippage was apparent only later, and that there was no way to tell whether it occurred gradually or was related to the injury.
Although Dr. Buchanan attributed the permanent disability solely to McNeese's preexisting condition, he admitted he had "no idea" when the slippage occurred. Dr. Buchanan concluded, "all I can tell you is, the bone scan being negative, he has a grade one slip now. He has an injury." Both doctors agreed McNeese's bone scan should have been positive if a recent bone fracture had occurred, but neither could say when the slippage, or cracks of the spine had occurred. Further, McNeese is correct in stating the evidence is uncontradicted that he performed heavy manual labor for years with no apparent problem prior to his injury, and despite any preexisting back condition. Thereafter, he was limited by both treating physicians to light duty work.
We simply cannot say that the finding that McNeese sustained no permanent disability or loss of wage earning capacity as a result of his accidental injury was supported by substantial evidence. Conflicting medical evidence from two physicians, both seemingly reliable since the qualifications of neither one as an expert witness were challenged, made the decision a very close one. It is most significant that the medical experts could not determine, one way or the other, how and when the slippage actually occurred. In Stuart's Inc. v. Brown, 543 So.2d 649, 652 (Miss 1989) this Court stated:
[W]e have often held that (1) close questions of compensability should be resolved in favor of the worker, and (2) the act should be liberally construed to carry out its beneficent remedial purpose... .
The decision of the Workers' Compensation Commission is reversed and remanded for a determination of allowable benefits.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.