592 So.2d 959 (1991)
MISSISSIPPI STATE TAX COMMISSION
v.
VICKSBURG TERMINAL, INC., et al.
No. 07-CA-59509.
Supreme Court of Mississippi.
December 18, 1991.
Bobby R. Long, Gary W. Stringer, Michael Stribling, Jackson, for appellant.
Ellis B. Bodron, Way Field & Bodron, Vicksburg, for appellee.
*960 Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
PRATHER, Justice, for the Court:
The Mississippi State Tax Commission (hereinafter "MSTC") appeals from a judgment issued on July 22, 1988, by the Chancery Court of Warren County, Mississippi, reversing a decision by the commission assessing sales taxes against Vicksburg Terminal, Inc., (hereinafter "Vicksburg") and Delta Terminal, Inc., (hereinafter "Delta") in the wake of a determination by the MSTC that both Vicksburg and Delta were taxable as public storage warehouses. Vicksburg and Delta have cross-appealed on the issue concerning their "public" nature.
Three issues arise from the appeal and cross-appeal:
(1) Are Vicksburg and Delta taxable public storage warehouses within the meaning and purview of Miss. Code Ann. § 27-65-23 (Rev. 1990) [hereinafter "statute"] and Rule 67 of the Mississippi Sales and Use Tax Rules [hereinafter "rule"] during and/or after the periods they were assessed sales tax by the tax commission?
(2) Do Vicksburg and Delta operate facilities open to the "public" within the meaning of § 27-65-23 and Rule 67?
(3) If the answer to (1) and (2) is yes, does the fact that Vicksburg entered into a contract to service only Placid Refining Company and Placid's designees eliminate Vicksburg's tax liability from April 2, 1982, forward?
The answer to these three inquiries is (1) Yes, (2) Yes, and (3) No. Accordingly, this Court reverses and renders on direct appeal, and affirms on cross-appeal.

I.
Vicksburg and Delta are Mississippi corporations which operate commercial businesses in Vicksburg and Greenville, Mississippi, respectively. Both claim they are engaged in what is known in the trade as the "terminaling" business which involves, in a nutshell, the receipt, storage, and redelivery or withdrawal of liquid petroleum products. More on that later.
On December 8, 1980, following an audit, assessments of sales tax were levied against Vicksburg and Delta for operating public storage warehouses within the meaning and purview of the statute and the rule. On October 8, 1981, after a hearing, the MSTC affirmed assessments of sales tax against Vicksburg for the period January 1, 1978 to September 30, 1980 (33 months), in the amount of $41,653.50 and against Delta for the period of September 1, 1977 to August 31, 1980 (36 months), in the amount of $25,541.15. Vicksburg and Delta paid the assessments, have continued to pay sales tax as public storage warehouses, and seek a refund of all amounts paid.
Vicksburg promptly filed a complaint in the Chancery Court of Warren County, and Delta filed its complaint in the Chancery Court of Washington County; both sought refunds of the assessments paid and all sales tax paid subsequent to the date of the assessments. On January 23, 1986, following amendments to the complaints, these cases were consolidated for hearing in the Chancery Court of Warren County. By agreed statement, the parties requested resolution of the matter on lengthy stipulations and briefs.
On July 22, 1988, the chancellor reversed the MSTC and entered judgment for Vicksburg and Delta from which judgment the MSTC has appealed.
The chancellor found that (1) both Vicksburg and Delta were "public", (2) that both Vicksburg and Delta engaged in the storage of tangible personal property, (3) that both Vicksburg and Delta received a fee for their services, and (4) the property was in the custody of a person operating a commercial business.
Nevertheless, the chancellor expressed concern over the fact the tax levied by § 27-65-23 was five percent (5%) of the gross income of the business conducted by Vicksburg and Delta which, he held, included much more than warehousing or storing petroleum products. Equally disturbing to the trial court was the fact the income *961 from the total business, not just from the public storage warehouse function, was included in the assessment.

II.
This Court is asked to decide whether a commercial business known in the trade as a "terminal company" which contracts with its customers to "receive," "store," "reship," and "handle" liquid petroleum products, is a "public storage warehouse" within the meaning of Miss. Code Ann. § 27-65-23 and Rule 67 of the Sales and Use Tax Rules promulgated by the Mississippi State Tax Commission.
This Court's review of an administrative agency's decision has been stated as follows:
Our Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designated to hear the appeal. The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. This rule has been thoroughly settled in this state.

Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664, 665 (Miss. 1969) (emphasis added); see also Mississippi State Tax Commission v. Dyer Investment Company, Inc., 507 So.2d 1287, 1289 (Miss. 1987) ["Ordinarily the scope of judicial review of the actions of an administrative agency is limited by the familiar arbitrary and capricious standard. The State Tax Commission is such an agency and, accordingly, both the Chancery Court and this Court were and are limited in appellate authority."]
Relevant facts found within the four corners of the record of stipulations presently before us disclose the following:
(1) Vicksburg and Delta are engaged in commercial businesses referred to in the trade as "terminaling." They both facilitate the removal of liquid petroleum products from waterborn barges into land based tanks and subsequently from those tanks into tanker trucks operated by "jobbers." The title to the products never passes to Vicksburg or Delta. The custody of the products is transferred to Vicksburg and Delta when it enters their hoses. Customers do not receive, by contract or otherwise, any property interest in the real property surrounding the storage tanks or in the facilities. Neither Vicksburg nor Delta, under their contracts, rent or lease all, or any part, of their property or their facilities to customers by grant of exclusive possession.
(2) The barges and trucks are controlled by the customers who are oil companies. When the barges arrive at the dock, the customers, with some assistance from Vicksburg and Delta, pump the product from the barges into Vicksburg's or Delta's piping manifold. Vicksburg or Delta then directs the product into the appropriate storage tanks by choosing which valves to open and which to close.
(3) By directing the product to certain tanks, Vicksburg and Delta comingle like qualities of product. At the time of the assessments, Vicksburg and Delta each had seven (7) storage tanks. Both Vicksburg and Delta comingled products of their customers in at least four (4) of their storage tanks.
(4) The liquid petroleum products remain in the storage tanks of Vicksburg and Delta for various lengths of time. At least one delivery of product remained in storage for two and one-half years. A quantity of 15,000 barrels would normally remain *962 stored in Vicksburg's or Delta's storage facilities for two to three months.
(5) All of the contracts with customers provide for Vicksburg and Delta to provide Workers' Compensation, Comprehensive General Liability and Comprehensive Automobile Liability Insurance. The contracts also provide for a certain percentage loss allowance for product, over and above which Vicksburg and Delta would be liable.
(6) Vicksburg and Delta are paid, according to their contracts, on a per-barrel or per-gallon of product basis. The contracts provide that the compensation is for product delivered for unloading, storing, and reloading or for product delivered for all terminaling services. The compensation is measured on a monthly basis by the barrels or gallons of product withdrawn from storage during the previous month, based upon Vicksburg's and Delta's own calculations from their computers, metering equipment, and manifest tickets. The amount of the compensation is determined by multiplying the number of barrels or gallons of product delivered to the tanker trucks by a "throughput" charge per-barrel. The per-barrel or per-gallon fees charged by Vicksburg and Delta vary according to the amount of product stored and/or "throughput" through the system. The amount of compensation is the same regardless of the length of time the product remains in the tanks of Vicksburg or Delta.
(7) During the time covered by the assessments, Vicksburg had contracts with four customers or shippers, viz., American Oil, Union Oil, Falco, Inc., and Placid Refining. Delta had contracted with six customers, viz., Amoco, Ergon, Exxon, Union Oil, Charter International, and Placid Refining.
(8) Since August of 1980, there has been no change in Delta's operations. Delta now, and since November of 1984, contracts with three instead of six customers.
(9) Since September of 1980, Vicksburg has not changed its basic operations. Vicksburg has contracted with only one customer, Placid Refining Company (hereinafter "Placid") since March of 1982.
With these facts in mind, this Court engages in the following inquiry: Are Vicksburg and Delta taxable "public storage warehouses?"

A. The Definition of Public Storage Warehouse
What are the identifiable and traceable elements of a "public storage warehouse?" The logical starting point for an answer to this question is with the two primary sources, the statute and the rule.
Section 27-65-23 identifies miscellaneous businesses which are subject to sales tax. It reads, in its pertinent parts, as follows:
Upon every person engaging or continuing in any of the following businesses or activities there is hereby levied, assessed and shall be collected a tax equal to six percent (6%) of the gross income of the business, except as otherwise provided:
* * * * * *
Public storage warehouses;
* * * * * *
Rule Number 67 of the Sales and Use Tax Rules promulgated by the Mississippi State Tax Commission defines a storage warehouse as follows:
RULE 67. Public Storage Warehouses.
Storage Warehouses:
A storage warehouse is a place where tangible personal property is kept and stored for a fee in the custody of a person operating a commercial business. The gross income received from such an activity is taxable at the regular retail rate of sales tax.
Rental of Storage Facilities:
Income derived from the rental of real property for the purposes of storing tangible personal property wherein the lessee has control of the facilities and the property stored is not subject to tax. Example: mini storage facilities.
The first identifiable element of a public storage warehouse is found in the statute itself while the other four elements may be gleaned from the rule.
(1) A public storage warehouse must be a place open to the public.
*963 (2) A public storage warehouse must be "a place where tangible personal property is kept and stored."
(3) A public storage warehouse must be a place where the tangible personal property is kept and stored "for a fee."
(4) A public storage warehouse must be a place where the property is kept and stored for a fee "in the custody of a person operating a commercial business."
(5) A public storage warehouse must be a place where the customer does not have control of the facilities and the stored property by the rental of real property.
Thus, a "public storage warehouse" is a place where (1) the public (2) keeps and stores tangible personal property (3) for a fee (4) in the custody of a person operating a commercial business (5) where the customer does not have control, by rental of real property, of the facilities or the property stored therein.

B. The "Limestone" Decision
The only case to come before this Court construing the statute and rule in question is Lambert v. Mississippi Limestone Corporation, 405 So.2d 131 (Miss. 1981). The Limestone Corporation, based on a written agreement, furnished to MisCoa a storage facility and certain handling services. The Limestone decision recognized at the outset that Rule 67 did not define the word "public" but explained what constituted the operation of a storage warehouse. After strictly construing the statute and Rule 67, we reached the conclusion that Limestone was not operating a public warehouse. 405 So.2d at 132.
This Court held that Limestone was not operating a public warehouse because:
(1) Limestone's storage facility was built for the primary purpose of entering into an exclusive 5 year storage contract with MisCoa.
(2) MisCoa agreed to pay Limestone an annual rental fee of $3.00 per ton for 15,000 tons storage.
(3) The annual rental fee remained the same regardless of the amount of fertilizer stored.
(4) MisCoa could terminate the exclusive rental agreement if Limestone stored the products of others.
We concluded Limestone was not a public warehouseman subject to state sales taxation because Limestone was leasing the facility exclusively to MisCoa, the fee was a fixed annual payment which did not vary based upon the amount of personalty stored, and MisCoa could terminate the contract for third party storage.
Limestone, nevertheless, was still operating a storage warehouse. It simply was not operating a public storage warehouse.

C. Are Vicksburg and Delta "Public" Storage Warehouses?
The chancellor found the existence of each one of the elements of a public storage warehouse and, thus concluded that Vicksburg and Delta were "public" in nature. This Court agrees inasmuch as they contract with whomever they choose to contract, whether an oil company or member of the public at large. As a practical matter, their "public" is the oil industry, all of whom have an implied invitation to contract with appellees for their services. The right to contract for services rendered by Vicksburg and Delta is open to all. Any customer that meets their prices can contract. Where, as here, any oil company or member of the public at large willing to pay the regular charges can store its product, the business is "public" as that term is commonly understood.
In support of their argument on cross-appeal assailing the chancellor's finding of their "public" character, cross-appellants argue (1) they do not do business with a majority of oil companies in Mississippi which use public storage warehouses, (2) their contracts restrict their ability to be available to the public, and (3) they do not advertise and have not solicited any significant portion of the "public storage warehousing" public.
First, it matters not that Vicksburg and Delta do not actually do business with a majority of oil companies which use public storage warehouses. It is enough they are *964 open and available to do business with any number of them. They can and do store for as many customers as their capacity will allow. During the period of assessments, they contracted with as many customers as they could and sought to fill their tank capacity with the products of anyone willing to pay their price. This meets the definition of "public" warehouse. All public storage warehouses, of course, have a finite capacity which restricts the number of customers they may serve. Delta and Vicksburg are certainly no different.
Second, Vicksburg's and Delta's contracts do not restrict the number of customers they may serve. Rather, it is the space available which limits the number of customers.
Third, the fact that Vicksburg and Delta neither advertise nor solicit does not extinguish their public character. While it is true that Vicksburg and Delta operate highly specialized businesses which, as a practical matter, would not benefit the public at large, nothing in the record suggests the services of Vicksburg and Delta would not be available to any member of the general public who could meet their prices.
The fact that their "public," again as a practical matter, is restricted to a certain classification does not make Vicksburg and Delta any less public so long as their terminals are open to all. A business engaged in repairing automobile engines is open to the public at large even though, as a practical matter, its customers are limited largely to those persons owning automobiles. A grain elevator is taxed as a public storage warehouse although not everyone grows grain.
In view of these considerations, the argument advanced in the cross-appeal filed by Vicksburg and Delta assailing the chancellor's finding of their "public" character is devoid of merit.
Vicksburg and Delta also contend they are not public storage warehouses because "storage" is neither the primary service rendered by the companies nor is storage, in any part, the basis upon which the amount of compensation is determined.
The chancellor found difficulty with the fact the statute taxes the gross income of the business of public storage warehousing even though Vicksburg's and Delta's businesses include various sub-activities in addition to storage. Some of the sub-activities the chancellor found to exist include (1) receiving the product, (2) docking the barges, (3) inspecting the cargo, (4) pumping into storage, (5) delivering to trucks, (6) record-keeping, (7) metering, (8) insurance, (9) quality control, (10) wharfing, (11) factoring, (12) agent for delivery, and (13) accounting.
These sub-activities are incidental and secondary to Vicksburg and Delta's primary service of public storage warehousing. It goes without saying that in order for one to store, one must necessarily place into storage and eventually remove from storage. Receiving, docking, inspecting, pumping into and out of storage, accounting for the product by weight and volume, recordkeeping, quality control, and the like are incidental functions of nearly every warehouse.
By virtue of a majority of their contracts, both Vicksburg and Delta are required to have available at all times during the terms of their agreements, storage facilities sufficient to store minimum quantities of product. Storage, it appears, is more than an incidental part of the business conducted by Vicksburg and Delta. It is an integral part of their business and the sine qua non of their existence. But for their storage capacity and their ability to store, the business could not viably exist.
Mississippi's sales tax laws take into account the fact that businesses perform sub-activities. Miss. Code Ann. § 27-65-9 provides, in part, as follows: "`Business' shall mean and include all activities or acts engaged in (personal or corporate), for benefit or advantage, either direct or indirect, and not exempting sub-activities in connection therewith. Each of such sub-activities shall be considered business engaged in, taxable in the class in which it falls." [emphasis supplied]. See Brady v. Getty Oil Co., 376 So.2d 186 (Miss. 1979).
*965 The chancellor also found difficulty with the fact the fee collected is based upon quantities delivered to jobbers after storage, i.e., the amount of product withdrawn, and not upon quantities stored. This Court does not share this concern.
One must, for billing purposes, measure the quantity of product stored in some active manner. The products here, to a great extent, are commingled. Consequently, an efficient and economical measure for monthly billing is either by input or outflow. Measuring or accounting for the fee by withdrawal, i.e., delivery, does not make or break the character of a public storage warehouse. The proverbial bottom line is that measurement of the fee by the amount of product withdrawn from the tanks is, in effect, measurement of the product stored. In other words, the quantity of the product taken out of storage is indicative of the quantity placed into storage and thus stored.
Vicksburg and Delta have charge, care, custody, and control of the liquid petroleum products once it enters their manifolds and is piped into their tanks. They perform a service that is sold to their customers. Whether their activity is called "terminaling" or anything else, both Vicksburg and Delta are taxable entities as public storage warehouses within the meaning and purview of the statute and the rule.

D. Is Vicksburg Still a "Public Storage Warehouse?"
In April, 1982, Vicksburg contracted most of its then-existing storage capacity to Placid on a "primary service" basis. Vicksburg's contract with Placid is to "primarily service" Placid's products. Placid, in turn, contracts some of the storage capacity it receives from Vicksburg to Amoco and others. All other facts concerning its operations remain the same. Vicksburg still takes custody of the product and exercises control over the product and its own facilities; Vicksburg still stores the products of more than one customer; Vicksburg still comingles products in its storage tanks; Vicksburg still charges its per barrel or per-gallon "throughput" charges. In short, Vicksburg continues to perform all services previously performed, even for Amoco, because it has charge, care, custody, and control of the product and its own facilities.
Vicksburg claims its "primary service" contract with Placid in 1982 eliminated its "public" character, if any. Vicksburg contends its change in operations changed its public nature. This Court disagrees.
Vicksburg remains a "public" storage warehouse because it still stores the products of more than one company and, unlike Limestone, does not have an "exclusive" storage contract with Placid. Moreover, Vicksburg, unlike Limestone, did not construct its facility for the primary purpose of storing exclusively for only one customer, nor has it stored for only one customer since it began operations.
Vicksburg's contract with Placid is a storage agreement not unlike all of Vicksburg's previous contracts save for three exceptions: (1) It recites that Vicksburg will "primarily service" Placid, (2) it allows Placid "exclusive use" of six (6) of the then existing seven (7) storage tanks, and (3) it gives Placid a right of first refusal on additional storage space.
This contract does not lock Vicksburg into storing for Placid exclusively. To the contrary, the agreement by the parties that Vicksburg will "primarily service", as opposed to "exclusively" service, reflects that Vicksburg can and will store for others. It appears that Vicksburg is now a public storage warehouse using Placid as an agent for contracting. This is pretextual. Vicksburg should not be allowed to use its contract with one oil company as a shield from sales taxation when it, in fact, stores for more than one oil company.
Having no exclusive storage provision, Vicksburg's contract with Placid does not, in view of Limestone, rise to the level of a lease. Vicksburg can at any time find itself storing, not only the products of Placid and Amoco, but the products of anyone else.
This Court concurs with the MSTC that, under its new contract with Placid, Vicksburg has three avenues of public character: (1) It can contract on its own, (2) it can tell other customers to contract with Placid, or (3) Placid can contract with others. *966 Placid, in fact, has contracted with Amoco. The contract, in material respects, is not unlike all the rest. Placid does not perform the services contained in the contract; Vicksburg does.
Once again, the bottom line is that Vicksburg's contract with Placid is not an "exclusive" storage contract. Vicksburg still stores the products of whomever wants to pay the contract price. Vicksburg does not rent or lease its facilities exclusively to one customer in exchange for a fixed rental fee. Vicksburg continues to exercise charge, care, custody, and control over the products it stores and over its facilities. In short, Vicksburg is still a "public storage warehouse."

III.
The judgment issued on July 22, 1988, declaring the sales tax assessments invalid and setting those assessments aside is vacated. That portion of the chancery court's judgment declaring invalid and void all sales taxes paid since the specified assessment periods is, likewise, vacated. That portion of the judgment directing the Mississippi State Tax Commission to refund to each complaining party, at the annual interest rate of eight percent (8%), the sales taxes paid pursuant to the assessments, and the sales taxes paid by each party subsequent to the assessment periods, is also vacated.
The decisions of the Mississippi State Tax Commission issued on October 8, 1981, with respect to Vicksburg Terminal, Inc. and Delta Terminal, Inc., are hereby reinstated.
REVERSED AND RENDERED ON DIRECT APPEAL: AFFIRMED ON CROSS-APPEAL; DECISIONS OF MISSISSIPPI STATE TAX COMMISSION ISSUED OCTOBER 8, 1981 REINSTATED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.