# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CT-01338-SCT

*ARTHUR SHARPE*

*v.*

*CHOCTAW ELECTRONICS*

*ENTERPRISES AND*

*MISSISSIPPI MANUFACTURERS ASSOCIATION WC GROUP*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/1998 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN GRIFFIN JONES |
| | KENNETH ALLEN MILLER |
| ATTORNEYS FOR APPELLEE: | KEITH R. RAULSTON |
| | CHRISTY CROCKETT McCLUSKEY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 09/14/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/5/2000 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Appellant Arthur Sharpe was working as personnel supervisor for appellee Choctaw Electronics Enterprises, a manufacturing business in Neshoba County, when he began experiencing respiratory and other health problems. Sharpe was awarded permanent total disability benefits by a workers' compensation administrative law judge in 1996. Choctaw appealed, and the Workers' Compensation Commission reversed, finding that Sharpe had failed to show that the conditions of his employment had caused his health problems. The Neshoba County Circuit Court affirmed. Sharpe's appeal was assigned to the Court of Appeals, which affirmed the circuit court's ruling. We in turn granted certiorari.

¶2. We find ample evidence in the record which establishes an adequate causal connection between Sharpe's physical condition and his work environment at Choctaw, rendering his injury compensable, and that the Commission's finding to the contrary is not supported by substantial evidence. We therefore reverse and remand this case to the Commission for a determination of the extent, if any, Sharpe has suffered a loss of wage-earning capacity due to the injury.

# STATEMENT OF THE FACTS

¶3. Arthur Sharpe was principally a career military serviceman. He is a high school graduate and has some college education. He has the benefit of extensive military training received during the course of his thirty-seven years of active and reserve duty in the Army National Guard. Prior to and upon returning from a service tour in Korea, he was employed by F. W. Woolworth, where he eventually attained the status of store manager. He continued to work as a manager for different employers prior to returning to full-time military service as a civilian administration and supply technician in the Mississippi National Guard. Following completion of his military career, Sharpe began employment with Choctaw Electronics as personnel supervisor in October of 1988.

¶4. Sharpe maintained that when he began his employment at Choctaw he was in excellent health, having just passed a yearly physical examination at the Mississippi National Guard. As part of the physical examination, he was required to complete a four-mile run, which he did in thirty-eight minutes. He continued to run two to three times per week for the next four years. By all accounts, Sharpe did not experience any lung or respiratory problems prior to his employment with Choctaw; neither was there any evidence that he was exposed to chemical irritants prior to his employment with Choctaw. At least until 1992, Sharpe's duties at Choctaw were limited to that of personnel supervisor. Then Sharpe's personnel duties grew to include the responsibilities of safety supervisor as well. It was also during this time or just prior to it that Sharpe began to experience shortness of breath and decreased stamina during physical exertion.

¶5. Sharpe testified as to the manufacturing steps and materials needed to produce the speaker systems at Choctaw. Many different chemicals, thinners and solvents in varying amounts were used during the manufacturing process and to clean the production floors on an occasional basis. Sharpe spent in excess of three-quarters of his daily time at the plant on the production line supervising the employees. He was present during and often assisted in the floor clean-ups. As safety supervisor, Sharpe was present during the disposal of the waste chemicals. The disposal method used at Choctaw consisted of open-drum burning behind the plant, and he was always present during the burns. Upgrades to the ventilation system and alternative methods of disposal were implemented following an onsite OSHA inspection.

¶6. Of the several chemicals used, one in particular, III Trichloroethane, was used frequently and disposed of via open-drum burning. The burning of III Trichloroethane caused Sharpe to experience headaches, and that excessive exposure would often result in coughing and flu-like symptoms. The vast majority of the chemicals used at the plant are known to cause pulmonary distress, irritation or allergic reactions when ingested in sufficient quantities.

¶7. Choctaw alleged that Sharpe's exposure to the chemicals at Choctaw resulted in an exacerbation or aggravation of an existing pulmonary ailment.

¶8. Sharpe terminated his employment with Choctaw in February of 1995.

¶9. An administrative law judge awarded Sharpe permanent total disability benefits in the amount of $252.59 per week for 450 weeks as a result of work-related lung disease. The Commission reversed the administrative law judge's award of benefits, finding that there was insufficient evidence establishing a causal connection between Sharpe's employment with Choctaw and his lung disease. The Commission's decision was affirmed by the circuit court.

¶10. The Court of Appeals affirmed, finding that the Commission's decision to deny benefits was supported by substantial evidence, as only one expert, Dr. Frederick Duggan, testified that it was possible that Sharpe's condition and the conditions of his employment were related. *Sharpe v. Choctaw Elecs. Enters.*, No. 1998-WC-01338-COA (Miss. Ct. App. 1999). In a dissent, Judge Payne, joined by Presiding Judge King and Judges Diaz and Lee, argued that the circumstances surrounding Sharpe's illness and the experts' inability to find any other cause for his illness amounted to sufficient proof to find Sharpe's illness compensable.

## DISCUSSION

¶11. Because Sharpe's three assignments of error are all related and can be resolved upon a review of the Commission's findings of fact, they are combined and discussed as a single point of error:

### IS THERE SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISSION'S FINDINGS?

¶12. This Court's scope of review in workers compensation appeals is limited to a determination of whether substantial evidence exists to support the findings of the Workers Compensation Commission. *Hardin's Bakeries v. Dependent of Harrell*, 566 So. 2d 1261, 1264 (Miss. 1990).

¶13. Sharpe argues that the Court of Appeals erred in not finding that his exposure to chemicals at Choctaw resulted in an injury as contemplated by the Workers' Compensation Act.

> The work connection test arises from Miss. Code Ann. § 71-3-7 (1972). The worker's employment, however, need not have been the sole source of the injury. The claim is compensable if the injury or death is in part work connected. Injury or death arises out of and in the course of employment even when the employment merely aggravates, accelerates or contributes to the injury.

*Chapman v. Hanson Scale Co.,* 495 So. 2d 1357, 1360 (Miss. 1986) (citations omitted); *see* Vardaman S.Dunn, Mississippi Workmen's Compensation § 164 (3d ed. 1982). It is well settled that where a claimant's employment contributes to his condition, the injury is compensable. *Hedge v. Leggett & Platt, Inc.,* 641 So. 2d 9, 14 (Miss. 1994) (citing *Jenkins v. Ogletree Farm Supply,* 291 So. 2d 560, 563 (Miss. 1974)). As did the Commission, the circuit court, and the Court of Appeals, we evaluate the circumstances of Sharpe's work environment and the opinion of each of the four experts involved in this case. Sharpe began working at Choctaw in October of 1988 as a personnel supervisor. The record indicates that when he joined Choctaw he was in excellent health, never having experienced any respiratory ailments. In 1992, Sharpe began to experience shortness of breath and other lung problems when his job duties expanded to require him to spend the majority of his workday in the manufacturing plant and to supervise daily disposal of waste toxic chemicals. Sharpe's testimony, corroborated by the employer representative, Angel Lynn Huddleston, reveals that Sharpe's duties required him to work regularly in poorly ventilated areas of the plant where toxic chemicals were used extensively and to supervise frequently plant cleanup which consisted of open air burning of these chemicals in drums behind the plant. One of the principal chemicals that was burned on the premises was III Trichloroethane. Burning this chemical caused Sharpe to experience headaches, coughing, and other flu-like symptoms. The OSHA Material Safety Data Sheets on III Trichloroethane, which were admitted in evidence, report that the substance decomposes into phosgene (mustard gas) when burned at a sufficiently high temperature.

¶14. Dr. Frederick T. Duggan, a board-certified pulmonologist and internal medicine specialist, is Sharpe's chief treating physician. Dr. Duggan first examined Sharpe in 1992 after complaints of shortness of breath, and at that time, Dr. Duggan diagnosed Sharpe with a reversible airways disease. In 1995, Dr. Duggan again performed pulmonary studies following a fainting episode at work. Those studies revealed obstructive ventilatory impairment and decrease in respiratory muscle strength. After further testing, Dr. Duggan contributed Sharpe's respiratory problems to his work environment and placed Sharpe on medical leave from work for approximately three to four months, during which his condition improved. However, Sharpe eventually experienced a setback. Choctaw argues that Sharpe's set back proves his exposure to chemicals at Choctaw could not have contributed to his respiratory problems. However, Dr. Duggan explained the impairment was a progressive condition that became permanent, causing Sharpe's ultimate physical condition.

¶15. Dr. William C. Pinkston, a board-certified pulmonologist who testified for Choctaw, stated that the pulmonary function studies he performed showed normal lungs. However, Dr. Pinkston did not think that Sharpe was "faking," and acknowledged Sharpe may have been experiencing shortness of breath and fatigue. Dr. Pinkston opined that Sharpe's shortness of breath was not related to chemical exposure at work, but could not give any other reason for Sharpe's debilitating health.

¶16. Dr. Arthur Hume, a pharmacologist and toxicologist who testified for Choctaw, stated that certain chemicals in the plant, particularly hyrdroquinone and cyanoacrylate, could cause and aggravate a pulmonary condition. But Dr. Hume was of the opinion that Sharpe's physical condition could not have resulted from his work environment, stating that the ambient air concentration of those chemicals was not sufficient to affect Sharpe. Significantly, Dr. Hume admitted that he neither measured nor was aware of the precise ambient air concentration of chemicals in the plant at the time of Sharpe's employment. Therefore, Dr. Hume's opinion, based upon only a subjective presumption of low air chemical concentration, is suspect.

¶17. Because of a lack of consensus among the experts, the administrative law judge selected Dr. Brian Forrester, a specialist in occupational medicine, to perform an independent medical evaluation of Sharpe. No additional pulmonary function studies or other diagnostic testing was performed by Dr. Forrester. Based on a review of records compiled by Dr. Pinkston and Dr. Duggan and information on the particular chemicals used at Choctaw, Dr. Forrester concluded that Sharpe suffered from a form of adult-onset asthma, the exact cause of which he could not identify. He further concluded that Sharpe's lung condition was temporarily aggravated but that the chemical exposure was no longer operating as a factor in his present condition. Dr. Forrester did, however, order Sharpe to refrain from working around chemicals that were used at Choctaw.

¶18. "It is well established that the provisions of Mississippi's Workers' Compensation Statute are to be construed liberally in favor the claimant and in favor of paying benefits for a compensable injury." ***Emerson Elec. Co. v. McLarty***, 487 So. 2d 228, 230 (Miss. 1986) (collecting citations). Applying this liberal standard, it is readily apparent that Sharpe's physical condition is causally linked to his exposure of chemicals at Choctaw. Reviewing Sharpe's work history and the statements of each expert, it is undisputed that Sharpe (1) suffered no pulmonary problems prior to his employment at Choctaw; (2) has demonstrated the presence of a lung ailment and/or shortness of breath; (3) has been exposed to substances at Choctaw which cause pulmonary distress; and (4) has been advised by every expert to avoid exposure to chemical irritants for fear of aggravation of his condition.

¶19. The worst case scenario for Sharpe is that the connection between his work environment and debilitating health is somewhat attenuated or doubtful. And as this Court has stated, "[d]oubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes of the statute." *Miller Transps., Inc. v. Guthrie*, 554 So. 2d 917, 918 (Miss. 1989). With workers' compensation cases, this Court is rightly committed to insuring that injured employees are justly and appropriately compensated for debilitating injuries caused, contributed, or aggravated in the course of service to the employer. *See Marshall Durbin Cos. v. Warren*, 633 So. 2d 1006, 1010 (Miss. 1994); *General Elec. Co. v. McKinnon*, 507 So. 2d 363, 367 (Miss. 1987).

## CONCLUSION

¶20. For the foregoing reasons, we conclude that the Commission's findings were not based on substantial evidence. The connections between Sharpe's work environment and his health are simply too numerous to be purely coincidental. There is no doubt that Sharpe suffered an injury. Though he is now better, Sharpe's future employment is limited in general, and he is permanently restricted from working around such chemicals as found at Choctaw. The issue remains as to what extent, if any, Sharpe has suffered a loss of wage-earning capacity due to the injury. We therefore reverse the judgments of the Court of Appeals, the Neshoba County Circuit Court, and the Workers' Compensation Commission, and we remand this case to the Commission for such determination.

¶21. **REVERSED AND REMANDED.**

**PITTMAN AND BANKS, P.JJ., McRAE, MILLS AND COBB, JJ., CONCUR. PRATHER, C.J., SMITH AND DIAZ, JJ., NOT PARTICIPATING.**