856 So.2d 503 (2003)
Melissa J. HARRELL, Appellant/Cross-Appellee,
v.
TIME WARNER/CAPITOL CABLEVISION AND TRAVELERS CASUALTY AND SURETY COMPANY, Appellees/Cross-Appellants.
No. 2001-WC-01989-COA.
Court of Appeals of Mississippi.
April 29, 2003.
Rehearing Denied August 26, 2003.
*505 Lance L. Stevens, Jackson, attorney for appellant.
Phillip Perkins Embry, Oxford, Richard Mack Edmonson, Jackson, attorneys for appellees.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Melissa J. Harrell appeals from a decision of the Circuit Court of the First Judicial District of Hinds County, which affirmed in part and reversed in part the decision of the Workers' Compensation Commission. Harrell argues that the circuit court erred in affirming the Commission's decision that Harrell failed to prove by a preponderance of the evidence that her interstitial cystitis was caused or contributed to by a work-related injury. The employer and carrier have cross-appealed, and argue that the circuit court erred in reversing the Commission's decision that Harrell failed to prove that a right shoulder injury was work-related.
¶ 2. We find that substantial evidence supported the decision of the Commission. Therefore, we reverse that portion of the circuit court's decision reversing the decision of the Commission. We reinstate the decision of the Commission.

FACTS
¶ 3. Melissa J. Harrell fell at work on June 6, 1994. The employer paid Harrell temporary total disability benefits covering intervals from June 9, 1994 to October 20,1997, and permanent partial disability benefits from October 21, 1997 until September 20, 1999. On February 18, 1998, Harrell filed a petition to controvert, claiming that she had sustained work-related injuries to her lower back and right shoulder, and that the lower back injury caused a urological condition called interstitial cystitis. The employer and carrier admitted the compensability of the back injury, but denied the compensability of the other injuries.
¶ 4. After a hearing, the administrative law judge found that Harrell had failed to prove by a preponderance of the evidence that her compensable back injury caused or contributed to the interstitial cystitis. The judge further found that Harrell had failed to prove that the right shoulder injury was work-related. The judge awarded Harrell permanent partial disability benefits for the back injury in the amount of $29.28 for 450 weeks from October 6, 1997, the date of maximum medical improvement, with credit allowed for amounts previously paid. The judge also ordered the employer and carrier to pay for any medical services and supplies reasonably required to treat the back injury.
*506 ¶ 5. Harrell appealed to the Workers' Compensation Commission. The Commission affirmed the opinion of the administrative law judge. Harrell appealed to the circuit court. The circuit court ruled that there was substantial evidence to support the Commission's finding that Harrell had failed to prove that the interstitial cystitis was compensable. The court ruled that there was not substantial evidence to support the Commission's decision that Harrell did not sustain a compensable right shoulder injury.

STANDARD OF REVIEW
¶ 6. This Court applies the same standard of review as the circuit court. State Tax Comm'n v. Vicksburg Terminal, Inc., 592 So.2d 959, 961 (Miss.1991). This Court will affirm the findings and order of the Commission if they are supported by substantial evidence. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss. 1994). We will reverse only when the Commission's findings and order are clearly erroneous and contrary to the overwhelming weight of the evidence. Id. If there is substantial evidence to support the Commission's decision, the Commission must be affirmed "even though the evidence would convince this Court otherwise, were we the fact finder." Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988).

LAW AND ANALYSIS

I. DID THE CIRCUIT COURT ERR IN AFFIRMING THE FINDING OF THE COMMISSION THAT HARRELL FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT HER COMPENSABLE BACK INJURY CAUSED OR CONTRIBUTED TO THE INTERSTITIAL CYSTITIS?
¶ 7. To establish entitlement to benefits under the workers' compensation scheme, the claimant bears the burden of proving by a preponderance of the evidence each element of the claim of disability. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). The elements are: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the claimed disability. Id. A pre-existing condition is not always a bar to recovery for a disability. Rather, if the employment aggravated, accelerated, or combined with the pre-existing condition to produce the disability, the disability arose out of the employment and the claimant is entitled to compensation for the disability. Id. at 13.
¶ 8. The administrative law judge found that the medical testimony failed to relate Harrell's interstitial cystitis to her compensable back injury to a reasonable degree of medical certainty, and concluded that Harrell had not proven a causal connection between the compensable back injury and the interstitial cystitis. Harrell argues this finding was error. We review the evidence before the administrative law judge and the opinion of the administrative law judge that was affirmed by the Commission.
¶ 9. Harrell testified that she was hired by Capitol Cablevision in 1984, when she was twenty-four years old. Harrell worked as a telemarketing and sales representative. Her duties included handling the concerns of customers who came to the office, including billing issues, scheduling pay-per-view events, and checking converter boxes, remotes, and cabling. In 1992, she was assigned the additional duty of taking payments from customers. On June 6, 1994, Harrell was carrying company mail to Building C. As she walked up a ramp that led to Building C, her foot *507 caught a mat and she fell forward. She landed with her right palm down on the ramp and her right elbow in her stomach. Harrell testified that she immediately reported the fall to her employer and a Report of Injury B-3 form was filled out indicating that she injured her back and right shoulder.
¶ 10. Harrell went back to work two days after the fall. She continued working at Capitol Cablevision until November 1994, when she was terminated because she had exhausted her leave for the year and was requesting further leave to have an emergency hysterectomy. In August 1995, Harrell began working at Truvision/Wireless One as a corporate telesales and telemarketing supervisor. She was terminated on August 6, 1996, due to a corporate merger. Harrell testified that she has been unemployed since leaving Truvision/Wireless One.
¶ 11. In March, 1996, while employed with Truvision/Wireless One, Harrell began experiencing severe weakness and pain in the pelvic region. She made an appointment with her gynecologist, Dr. Darden North. Dr. North discovered blood in Harrell's urine. Harrell was already scheduled to have a gynecological procedure called a right oophorectomy, and Dr. North invited a urologist, Dr. Charles Secrest, to examine Harrell's bladder while she was under general anesthesia. After the procedure, Dr. Secrest diagnosed Harrell with a bladder disorder called interstitial cystitis. Harrell began seeing Dr. Secrest and Dr. John Aldridge, both of the Mississippi Urology Clinic, for treatment for the disorder.
¶ 12. Harrell testified about her symptoms from interstitial cystitis. Harrell stated that she experiences severely frequent urination, usually urinating forty to seventy times within one hour and a half. She stated that on an almost daily basis her bladder goes into spasm and will not release urine, forcing her to use a catheter in order to void. Harrell testified that she "lives in pain," and that her pain rapidly fluctuates in severity. She stated that she is unable to do housework, attend a job, or sit or stand for any period of time without excruciating pain. She stated that her urologists have not released her to return to work.
¶ 13. On cross-examination, Harrell testified about two prior back surgeries resulting from non-work-related injuries. In 1989, Harrell initially injured her back when she bent over to pick up a laundry basket. In 1991, Harrell experienced back pain and, on April 17, 1991, Dr. Bernard Patrick performed surgery for a bulging and protruding disk at the right L5-S1 level. In October 1991, while seven months pregnant, Harrell returned to Dr. Patrick complaining of back pain. Harrell reinjured her back in January 1994, while bending over to lift her child. On February 8, 1994, Dr. Patrick performed a second back surgery at the same location. Harrell returned to work after the surgery on May 2, 1994, approximately one month before her fall. She testified that after she returned to work and before her fall, she was "doing quite well" and was able to do her job.
¶ 14. The administrative law judge admitted Harrell's extensive medical records. The records of Dr. Bernard Patrick indicate that Harrell injured her back in 1989 while bending over to pick up a wastebasket, and that she subsequently experienced occasional back pain. In February 1991, Harrell had an acute episode of back pain that caused her absence from work for two weeks. In April 1991, Harrell had a severe acute attack with right leg radiation that resulted in her first surgery. During the surgery, Dr. Patrick removed a centrally extruded disc at the right L5-S1 *508 level and explored the L4-5 level and found it to be normal. Harrell was released to return to work on March 1, 1992.
¶ 15. Harrell did well until January 28, 1994, when she returned to Dr. Patrick complaining that when she bent over to lift her child, her back "popped" and she experienced burning pain radiating from the sacrum to the neck. An MRI showed a recurrent disc rupture at the site of the prior surgery, and a second surgery was performed on February 8, 1994, to remove a recurrent extruded disc fragment. Harrell was released following this surgery, but from February 26, 1994 to March 4, 1994, she was rehospitalized due to lower back and bilateral leg pain. Harrell returned to Dr. Patrick on May 20, 1994, complaining of low back pain. Dr. Patrick prescribed Xanax and recommended that Harrell continue to wear a full corset for at least another month.
¶ 16. The records of the MEA Medical Clinic indicate that Harrell sought treatment for low back pain on several occasions in June 1994, and that she attributed the pain to her recent fall at work. Harrell again saw Dr. Patrick approximately two months after the fall at work. Harrell complained that, since the fall, she had suffered worsening low back pain and increasing low back spasm, with spasms extending from the low back to the neck. Dr. Patrick recommended physical therapy. Twenty days later, Harrell returned and reported that she was worse with physical therapy. Dr. Patrick ordered a myelogram, isotope bone scan, and post-myelogram CT, which were all normal. On January 10, 1995, Dr. Patrick indicated that he believed Harrell could perform secretarial work but should be restricted from stooping, bending, or heavy lifting. On May 2, 1995, Harrell returned, again complaining of low back pain, but Dr. Patrick was unable to explain the persisting chronic nature of the pain and referred Harrell to Dr. Russell Blaylock.
¶ 17. The medical records of Dr. Blaylock reveal that he saw Harrell once, on May 9, 1995. Harrell reported her prior back surgeries and the fall at work. Dr. Blaylock performed a neurological examination and recommended a right sacroiliac joint injection. Dr. Blaylock also performed a lumbar MRI that revealed mild degenerative and post-operative changes at the right L5-S1 level.
¶ 18. The medical records of Dr. William Thompson indicate that he saw Harrell at the referral of Dr. Patrick on May 23, 1995. Harrell complained of increasing lower back and radiating right leg pain. Dr. Thompson diagnosed her as having a post-laminectomy status of continued back and leg pain, and recommended a trial of epidural steroid injections.
¶ 19. The medical records of Dr. Rand Voorhies at the Oschner Clinic indicate that Harrell saw Dr. Voorhies several times between May and October of 1996. Harrell told Dr. Voorhies that she had been diagnosed with interstitial cystitis. She complained of back pain and loss of bladder and bowel control. An MRI of the lumbar spine indicated degenerative disc disease at L4-5 and L5-S1, and possible scar tissue at L5-S1. Dr. Voorhies referred Harrell to Dr. Charles Aprill, who opined that the L4-5 disc was abnormal. Dr. Voorhies thought there was a possibility that Harrell would benefit from further surgery in the form of a lumbar fusion. He also referred Harrell to the Colon & Rectal Department for diagnosis of her bladder and bowel problems. However, on October 29, 1996, a conflict arose between Harrell and the physicians at Oschner and Dr. Voorhies recommended that Harrell be transferred back to a practitioner in the Jackson area.
*509 ¶ 20. The medical records of Dr. David Collipp reflect that Dr. Collipp saw Harrell on April 30, 1997, on referral from Dr. Lon Alexander, whose records were not introduced into evidence. Harrell reported the fall at work, her prior surgeries, and her diagnosis of interstitial cystitis. She also reported headaches coinciding with neck pain. Dr. Collipp diagnosed lumbar and cervical strains, and also recommended that Dr. Secrest perform urodynamics for the bladder condition. Additionally, Dr. Collipp ordered a functional capacity evaluation (FCE) for Harrell's chronic low back pain.
¶ 21. The FCE was performed on October 2, 1997. The FCE report stated that Harrell complained of low back pain and shoulder pain radiating up her neck and between her shoulder blades. The FCE report noted that Harrell was "completely self-limited by complaints of pain," such that the evaluation team was unable to observe signs of physiological maximums. The report stated that on Waddell's testing, Harrell scored a positive three out of five, which is consistent with symptom magnification. The report concluded that it was difficult to evaluate Harrell due to her focus on the pain, and that there was pain amplification and symptom exaggeration. The FCE report recommended that Harrell be released to work at a sedentary light level.
¶ 22. After reviewing the FCE, Dr. Collipp assessed Harrell relative to the June 6, 1994 injury, and assigned a date of maximum medical recovery of October 6, 1997. He assigned a 12% permanent physical impairment rating to the body as a whole due to Harrell's pre-existing back injuries, and an additional 5% permanent physical impairment rating due to the work-related injury. On October 6, 1997, Dr. Collipp opined that Harrell could return to work at a sedentary light level.
¶ 23. Dr. Robert McGuire performed an independent medical examination of Harrell on February 8, 1999, at the request of the administrative law judge. Harrell told Dr. McGuire about the fall and alleged that she injured her back and right shoulder. Dr. McGuire reviewed the records of the other doctors. Dr. McGuire opined that Harrell was still having a fair amount of back pain and that a surgical fusion would not alter the situation significantly. He stated that he had no problems relating the fall as an aggravator of her pre-existing back condition. Dr. McGuire offered to defer the causation of the bladder problems to Drs. Secrest and Aldridge.
¶ 24. The deposition of Dr. Charles Secrest was admitted. Dr. Secrest testified that he is board certified in urology. Dr. Secrest stated that he first saw Harrell on March 14, 1996, when he performed a cystoscopy, a procedure to look into the bladder with a scope. He found a limited bladder capacity. He noted that the lining of the bladder was cracked and bleeding, which is consistent with interstitial cystitis. Dr. Secrest defined interstitial cystitis as "a painful bladder condition of undetermined cause" that presents with symptoms such as pelvic pain, urinary frequency, and urinary retention. He stated that it is a benign disease, but it is chronic and can wax and wane over a period of time. He again stated that there is no known cause for the condition.
¶ 25. On April 3, 1996, Dr. Secrest performed a bladder washing to rule out cancer. The procedure confirmed his impression of interstitial cystitis. On May 13, 1997, he performed videourodynamics, a functional test of the bladder analogous to an EKG. The test showed pelvic floor spasticity, which confirmed interstitial cystitis, *510 and ruled out a neurogenic bladder[1] as the cause of Harrell's symptoms. Dr. Secrest stated that, given Harrell's prior back injuries, anything related to her back could possibly have an impact on her developing interstitial cystitis. He stated it would be impossible for him to say which event or culmination of events may have led to the disorder. Dr. Secrest stated that he thought the interstitial cystitis was related in some way to nerve damage, but that he had no way of knowing which of Harrell's injuries or surgeries could have caused it. He stated that it was feasible that scar tissue from the first or second surgeries contributed to the disorder.
¶ 26. The deposition of Dr. John Aldridge was admitted. Dr. Aldridge testified that he evaluated Harrell on July 16, 1996, at the request of Dr. Secrest. Dr. Aldridge stated that Harrell complained of bladder discomfort, frequent urination, and pain with intercourse. Dr. Aldridge opined that Harrell's urological problem was neurogenic and could have been related to her lower back problems. However, he was unable to opine as to which of the back surgeries or injuries caused or contributed to any neurogenic bladder disorder or interstitial cystitis that Harrell may have. Dr. Aldridge testified that he could not relate Harrell's bladder condition to the work-related back injury or to the surgeries to a reasonable degree of medical certainty. He stated that the condition could be related to scar tissue from one of the surgeries.
¶ 27. The deposition of Dr. Jackson Fowler was admitted. Dr. Fowler testified that he is the Chief of the Division of Urology at University Medical Center. Dr. Fowler stated that he saw Harrell once, on September 27, 1999. He reviewed her prior medical records, but due to her extensive records did not perform a physical evaluation. Dr. Fowler's evaluation focused on Harrell's urological complaints. Harrell reported urinary frequency and urgency, a sensation of incomplete bladder emptying, and discomfort with intercourse. Dr. Fowler's report stated that her symptoms and the cystoscopic findings are consistent with her diagnosis of interstitial cystitis. He stated that after reviewing her records, he concluded she did not have neurogenic bladder dysfunction.
¶ 28. Dr. Fowler opined that there was no conclusive reason to believe the work-related back injury led to the urological disorder. He cited three considerations informing his conclusion. Firstly, he was not aware of any convincing evidence that back or neurologic disorders produce interstitial cystitis. Secondly, there was an almost two year delay between the fall and the onset of symptoms. Thirdly, Harrell had a history of back problems preceding the fall, making it difficult to implicate the fall as the cause of the disorder. He stated that his opinion was based on a reasonable degree of medical certainty.
¶ 29. Based on the above evidence, the administrative law judge concluded that Harrell had failed to prove by a preponderance of the evidence that her work-related back injury caused or contributed to her interstitial cystitis. The Commission affirmed this decision. We find the Commission's decision was supported by substantial evidence. Drs. Secrest and Aldridge, Harrell's treating urologists, testified that the cause of interstitial cystitis is unknown. Both urologists testified that back injuries could have been a factor in the development of Harrell's bladder condition. *511 However, both urologists were unable to state to a reasonable degree of medical certainty that the work-related back injury of June 6, 1994, rather than Harrell's previous surgeries, or some other element, caused or contributed to the interstitial cystitis. Additionally, symptoms of the bladder disorder did not manifest until two years after the work-related injury.
¶ 30. Harrell argues that the administrative law judge erroneously relied on Dr. Fowler's statement that back injuries have not been linked to interstitial cystitis, and that Drs. Secrest and Aldridge testified about new medical literature establishing a possible link between back injuries and interstitial cystitis. The opinion of the administrative law judge does not rely on Dr. Fowler's statement, but rather on the inability of any expert, including Harrell's treating physicians, to state that there was anything more than a possibility that the work-related injury caused or contributed to the interstitial cystitis. It is well-established that recovery under the worker's compensation scheme must rest upon reasonable probabilities, not upon mere possibilities. Burnley Shirt Corp. v. Simmons, 204 So.2d 451, 454 (Miss.1967).
¶ 31. Harrell further argues that her case is analogous to Sharpe v. Choctaw Electronics, 767 So.2d 1002 (Miss.2000). In Sharpe, the claimant was exposed to chemical irritants in the work environment and developed respiratory problems. Id. at (¶ 13). Sharpe had no pre-existing pulmonary problems, and had not been exposed to chemical irritants prior to employment with Choctaw. Id. at (¶ 4). It was established that the majority of the chemicals to which Sharpe was exposed are known to cause pulmonary distress. Id. at (¶ 6). Experts testified that it was possible that the condition and the conditions of employment were related. Id. at (¶¶ 14, 17). No expert could testify to any other potential cause of Sharpe's condition. Id. at (¶¶ 14-17). The Commission found that Sharpe had failed to prove a compensable injury. Id. at (¶ 9).
¶ 32. The supreme court reversed the Commission, stating that "[t]he connections between Sharpe's work environment and his health are simply too numerous to be purely coincidental." Id. at (¶ 20). Though no expert stated to a reasonable degree of medical certainty that Sharpe's condition resulted from his exposure to toxic chemicals at work, the court concluded that Sharpe had proven that his injury was causally linked to his employment. Id. at (¶ 18). The court based its conclusion on findings that "Sharpe (1) suffered no pulmonary problems prior to his employment at Choctaw; (2) has demonstrated the presence of a lung ailment and/or shortness of breath; (3) has been exposed to substances at Choctaw which cause pulmonary distress; and (4) has been advised by every expert to avoid exposure to chemical irritants for fear of aggravation of the condition." Id.
¶ 33. Harrell argues that she proved that her interstitial cystitis is causally connected to her work-related injury because she showed that she has a urological problem, and that she suffered no urological problems prior to her employment with Capitol Cablevision. While these facts parallel Sharpe, Harrell failed to prove that a work-related fall could be a probable cause of interstitial cystitis. In the instant case, none of the physicians was able to establish anything more than a speculative link between a fall resulting in a back injury and interstitial cystitis, or between a fall aggravating prior back injuries and interstitial cystitis. Unlike the established link between the types of chemicals at Choctaw and development of *512 respiratory problems, interstitial cystitis is, definitively, a disorder of unknown etiology. The Commission's conclusion that Harrell failed to prove by a preponderance of the evidence that her bladder condition was caused or contributed to by her work-related injury was supported by substantial evidence.

II. DID THE CIRCUIT COURT ERR IN REVERSING THE DECISION OF THE COMMISSION THAT HARRELL FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT HER RIGHT SHOULDER INJURY WAS WORK-RELATED?
¶ 34. This issue has been raised on cross-appeal by Time Warner/Capitol Cablevision. The administrative law judge concluded that Harrell failed to prove by a preponderance of the evidence that she had sustained an injury to her right shoulder during her fall at work on June 6, 1994. The judge based his conclusion on the fact that there was no documentation of a problem with the Harrell's right shoulder until the FCE on October 1, 1997. The circuit court reversed, finding that the decision was not supported by substantial evidence.
¶ 35. We review the record pertaining to Harrell's shoulder injury. At the hearing, Harrell stated that after her fall, a Report of Injury B-3 form was completed indicating a shoulder injury. Harrell testified that she reported a shoulder injury from the fall to "every doctor she saw," and specified Drs. Patrick, Blaylock, Collipp, McGuire, and the doctor at the MEA Clinic. She stated that she had suffered no intervening events affecting her shoulder since the fall.
¶ 36. The record contains no B-3 form. Harrell's medical records show that two days after the fall, Harrell visited the MEA Medical Clinic, seeking treatment for a back injury. The clinic's records do not mention a shoulder injury. In August 1994, Harrell saw Dr. Patrick regarding the work-related back injury, but Dr. Patrick's records do not mention a shoulder injury. Likewise, Drs. Blaylock, Thompson and Voorhies did not note any shoulder problem. The 1997 FCE notes shoulder pain. On February 8, 1999, during the examination by Dr. McGuire, Harrell attributed a progressive right shoulder injury to the fall. Dr. McGuire checked the shoulder and found a possible rotator cuff tear. He opined that the condition could have been caused by that type of fall, and recommended that Harrell see a shoulder specialist.
¶ 37. Harrell had the burden to prove beyond speculation and conjecture that she sustained the shoulder injury in the course and scope of her employment. Coleman v. Chattanooga Container Corp., 377 So.2d 606, 608 (Miss.1979) (quoting Flintkote Co. v. Jackson, 192 So.2d 395, 397 (Miss.1966)). The record reveals no documentation of any shoulder problem until the 1997 FCE, approximately three years after Harrell's fall at work. Harrell's own unsubstantiated testimony was the primary evidence of a shoulder injury sustained in the fall. Dr. McGuire's opinion that the fall could have caused the shoulder injury was formed five years after the fall, and is not of such significance that the administrative law judge was bound to conclude that Harrell carried the burden of proof. Hudson v. Keystone Seneca Wire Cloth Co., 482 So.2d 226, 227-28 (Miss.1986). We find that the decision of the administrative law judge, as affirmed by the Commission, was supported by substantial evidence.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED ON DIRECT APPEAL AND REVERSED AND *513 RENDERED ON CROSS-APPEAL. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR.
NOTES
[1] In his deposition, Dr. Jackson Fowler stated that "neurogenic bladder dysfunction" refers "to a number of disorders where for one reason or another the nerves that make the bladder work don't work correctly."