ISHEE, J„
for the Court:
¶ 1. James D. Romine was employed by BFI as a garbage collector and garbage-truck driver. On December 6, 2002, Ro-mine filed two petitions to controvert with the Mississippi Workers’ Compensation Commission alleging that on May 21, 2002, and then again on August 6, 2002, he was exposed to toxic and hazardous materials during the course and scope of his employment. Romine alleged that he sustained injury to his neurological system which has caused him to suffer severe involuntary-movement disorder (dystonia).
¶ 2. On February 6, 2008, after a thorough review of the medical and lay testimony, and after a review of Mississippi case law on chemical exposure, the Administrative Judge (AJ) entered an order finding that Romine’s current condition was not causally related to the exposure of chemicals on the dates in question.
¶ 3. On July 2, 2008, the AJ’s decision was affirmed by the full Commission. On August 21, 2009, the Circuit Court of Jackson County affirmed the findings of the AJ and the Commission that Romine had failed to satisfy his burden of proof in establishing a work-related injury. Aggrieved, Romine has filed this appeal. Finding no error, we affirm.
FACTS
¶ 4. Romine, who testified on his own behalf, claimed that he suffered two work-related injuries through exposure to certain toxic chemicals. He testified that on May 21, 2002, he was working as a garbage collector when the contents of containers combusted, and he inhaled a chemical that took his breath away and brought him to his knees. He experienced a constant cough and was admitted for a short hospital stay. He further testified that, after returning to work, he was again exposed to toxic chemicals on August 6, 2002. Romine testified that on this occasion he “ran the blade” on the garbage truck, and then a white cloud of smoke began to emanate from the truck. Romine’s supervisors instructed him to transport the garbage to the dump, which was six or seven miles away. Romine testified that the odor persisted the entire trip. Upon inspection at the dump, the garbage contained muriatic brick acid and pool chemicals.
¶ 5. Immediately following the second exposure, Romine began experiencing shoulder pain which then progressed into involuntary muscle movements. He was admitted to Biloxi Regional Medical Center where he was diagnosed with severe dystonia. An MRI of the brain was con *374 ducted, and a small lesion of the left basal ganglia was detected. A subsequent MRI showed that the lesion had grown in size.
¶ 6. At Romine’s initial hearing, the AJ considered the testimony and reports of Romine’s treating physicians. Dr. Richard Gorman, a neurologist, testified that exposure to toxins “would appear to be with reasonable medical probability” the cause of the disorder; however, he further testified that if metabolic disorders were ruled out, then it was his opinion that toxic exposure was the cause. Various other physicians testified at the hearing. All of Romine’s other physicians opined that the dystonia was due to “unknown etiology,” Huntington’s disease, Wilson’s disease, or chorea.
¶ 7. At the hearing, the employer/carrier offered the testimony of Dr. Jonas Kalnas, a physician who specializes in exposures to various hazards on the job. After reviewing the records of Biloxi Regional Medical Center and Romine’s treating physicians, Dr. Kalnas opined that none of the claimed exposures could have caused Romine’s condition. It was his opinion that the more likely cause was either hemangioma or la-cunar infarct and that the exposures did not cause or aggravate his condition. He further testified that prolonged and repetitive exposure to certain chemicals can cause dystonia; however, the brief exposure of chemicals to Romine could not have been the cause of his disorder.
¶ 8. After a careful and thorough review of the medical and lay testimony, the AJ denied the claim, finding that Romine had failed to prove by a preponderance of the evidence that his dystonia was causally related to the work-related incidents. The full Commission affirmed the decision of the AJ, and the circuit court affirmed the Commission’s decision. Romine now appeals the ruling of the circuit court. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 9. The standard of review in appeals of workers’ compensation cases is limited; this Court must determine only whether the decision of the Commission is supported by substantial evidence and whether the law was correctly applied. Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991). “The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review.” Casino Magic v. Nelson, 958 So.2d 224, 228 (¶ 13) (Miss.Ct.App.2007) (citing Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court “will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.” Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 448 (¶ 8) (Miss.Ct.App.1999). Substantial evidence, though not easily defined, can be said to mean “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991) (citations omitted). Substantial evidence is more than a “mere scintilla” of evidence that does not rise to the level of a preponderance of the evidence; it affords “a substantial basis of fact from which the fact in issue can be reasonably inferred.” Id. We maintain this deferential standard even when we would have been persuaded to rule otherwise if we had been the fact-finder. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994).
DISCUSSION
¶ 10. Romine argues that the record is void of substantial, credible evidence to support the AJ’s findings, which were adopted without additional comment or *375 modification by the Commission, that Ro-mine’s dystonic condition was not shown to be causally connected to the chemical incidents of May and August 2002. He further argues that reversal is necessary based on the credibility of the employer/carrier’s retained expert, Dr. Kalnas. We will address each argument individually-

A. Lack of Substantial Evidence

¶ 11. In support of his argument, Romine references Sharpe v. Choctaw Electronics Enterprises, 767 So.2d 1002, 1007 (¶20) (Miss.2000), where the Mississippi Supreme Court found the claimant’s injuries to be compensable although the medical evidence concerning causation was not definitive. However, the Sharpe decision can be distinguished from the facts of Ro-mine’s case. In Sharpe, the supreme court held that, although the medical evidence was unclear as to causation, there was undisputed evidence that Sharpe had suffered no pulmonary problems prior to his employment; he demonstrated a lung ailment; he was exposed to substances which caused pulmonary distress; and he was advised by every expert to avoid exposure to chemical irritants for fear of aggravation. Id. at 1006 (¶ 18).
¶ 12. Although it is undisputed that Ro-mine suffers from dystonia after the August incident, the AJ and the Commission found that Romine had not shown by a preponderance of the evidence that he was exposed to chemicals that would cause dys-tonia. Or, alternatively, he was not exposed to the chemicals long enough to cause the disorder. “In a workers’ compensation case, the claimant bears the burden of proving by a ‘fair preponderance of the evidence’ each element of the claim”. Moore v. Indep. Life and Accident Ins. Co., 788 So.2d 106, 112 (¶ 19) (Miss.Ct.App.2001).

B. Credibility of Dr. Kalnas

¶ 18. Romine further argues that reversal should be granted based on the credibility of the employer/carrier’s retained expert, Dr. Kalnas. The AJ, in her official opinion, noted that, although there was conflicting testimony, Dr. Kalnas’s testimony was persuasive as he specializes in this area of research. She further noted that Dr. Kalnas described his research and provided numerous scientific authorities discussing the relation of dystonia to chemical exposure, and he explained in detail how he had reached his conclusion that Ro-mine’s history was not indicative of exposure to any of these substances known to cause dystonia.
¶ 14. The Commission is the judge of the credibility of witnesses. White v. Superior Prods., Inc., 515 So.2d 924, 927 (Miss.1987). If the Commission finds the testimony to be untrustworthy or unreliable, the Commission has the authority to reject it. Id. Although there is a tendency of the appellate courts to view testimony as a whole and to view it liberally in the claimant’s favor, where medical testimony is conflicting, the decision of the Commission will be upheld whether the award is for or against the claimant. Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 269 (Miss.1966).
1115. The decision of the Commission, and the subsequent affirmation of that decision by the circuit court, that Romine failed to satisfy his burden of proof in establishing a causal connection between his movement disorder and a work-related injury is supported by substantial evidence. Therefore, we affirm.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*376 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.