600 So.2d 179 (1992)
Thomas G. JORDAN
v.
HERCULES, INC.
No. 89-CC-451.
Supreme Court of Mississippi.
May 6, 1992.
*180 Darlene D. Ballard and Bill Waller, Sr., Waller & Waller, Jackson, for appellant.
Louie F. Ruffin, Aultman Tyner McNeese & Ruffin, Hattiesburg, for appellee.
Before ROY NOBLE LEE, C.J., BANKS and McRAE, JJ.
McRAE, Justice for the Court:
This workers' compensation case is an appeal from a decision by the Circuit Court of Harrison County, Mississippi, dated *181 March 22, 1989, wherein an award of workers' compensation benefits to appellant, Thomas G. Jordan, by the Workers' Compensation Commission was reversed in part and affirmed in part. We affirm in part and reverse in part both the decision of the Circuit Court and order of the Workers' Compensation Commission.

FACTS
On or about April 17, 1982, Jordan sustained injuries to his neck, left shoulder and back in a collision which occurred while he was riding as a passenger in a truck owned by his employer, Hercules, Inc. After Jordan became dissatisfied with the company-appointed physician, Dr. David Bomboy, Hercules authorized him to be treated by Dr. Edward Attix, an orthopedic surgeon in Hattiesburg, for chronic dislocation of the left acromioclavicular joint and atrophy of the muscles attached to the left scapula as well as a fracture to the left scapula. Although Dr. Attix treated Jordan until June 24, 1983, he felt he had reached maximum medical improvement on November 5, 1982, and estimated that he had a five percent (5%) permanent physical impairment of his left upper extremity. Dr. Attix also testified that when he last saw Jordan in May, 1984, he found nothing to indicate permanent physical impairment and released him from his care. Jordan saw numerous other physicians, including Dr. Guy Vise, who recommended and performed surgery on July 5, 1984. Neither Dr. Vise nor Dr. Guild had been authorized by Hercules to treat Jordan. Dr. Vise testified that Jordan reached maximum medical recovery on September 3, 1985, and rated his impairment as twenty-one percent (21%) permanent partial disability to the body as a whole. Dr. Donald Guild, a psychiatrist who treated Jordan for post-traumatic stress disorder, rated his permanent disability in the range of forty to sixty percent (40%-60%).
Jordan filed a Petition to Controvert on September 7, 1983. Hearings were held on February 7, 1984; August 22, 1985 and September 11, 1987. The opinion of the Administrative Law Judge was affirmed in part and reversed in part by the Full Commission as follows:
The Full Commission reverses the Administrative Judge's award of permanent partial disability benefits for insufficient evidence regarding claimant's efforts to obtain the same or other employment... .
* * * * * *
Although Dr. Vise and Dr. Guild testified claimant suffers a medical impairment to the body as a whole, claimant did not present evidence of incapacity because of injury to earn wages in the same or other employment as required by Section 71-3-3(i)... .
The Full Commission therefore finds claimant did not establish a loss of wage-earning capacity attributable to the compensable injury which would entitle him to an award of permanent partial disability benefits... .
The Full Commission finds claimant chose Dr. Barnes, Dr. Guild and Dr. Vise without authorization or consent from employer... .
IT IS THEREFORE ORDERED AND ADJUDGED that the employer, Hercules, Inc., a self-insurer, pay compensation benefits to claimant as follows:
1. Temporary total disability benefits at the rate of $112.00 per week from April 17, 1982, to September 3, 1985, with proper credit for wages earned by claimant or compensation paid by defendant up to $112.00 per week during this period; and
2. All medical services and supplies required by the nature of claimant's injury or the process of his recovery as provided in Mississippi Code Annotated Section 71-3-15 (1972). Defendant shall not be liable for payment of medical treatment rendered by or at the direction of Dr. Barnes, Dr. Guild or Dr. Vise except for $100.00 to be paid to Dr. Guild and to Dr. Vise as provided in Mississippi Code Annotated Section 71-3-15(5) (1972). Nor shall defendant be liable for travel expenses incurred in seeking medical treatment *182 from or at the direction of Dr. Barnes, Dr. Guild or Dr. Vise.
On January 9, 1987, the Commission entered an interlocutory order which remanded the case to the administrative judge for determination of whether the claim should be reopened, pursuant to Miss. Code Ann. § 71-3-53 (1972). The administrative judge entered a final order on January 26, 1988, and awarded Jordan temporary total disability benefits at the rate of $112.00 per week, beginning April 17, 1982, through September 3, 1985. He also awarded Jordan permanent partial disability benefits at the rate of $112.00 per week, beginning September 4, 1985, and continuing for a period not to exceed 450 weeks. Additionally, the administrative judge ordered Hercules to provide Jordan with all medical services and supplies such as might be necessary for recovery from his injuries, including specifically, the charges for medical treatment by Dr. Guy Vise, whose treatment was sanctioned by the employer's neglect and refusal to provide proper medical treatment to the claimant. Penalties and sanctions were also awarded against the employer.
Counsel for Hercules filed a petition for review and the Commission entered its order on October 12, 1988, affirming the administrative judge's decision as to temporary total and permanent partial disability benefits, but reversing the ruling which required the employer to pay for medical services rendered by Dr. Barnes, Dr. Guild, and Dr. Vise.
Jordan appealed to the Circuit Court of Harrison County, which held that:
(1) Employer, a self-insurer, shall pay to the claimant temporary total disability benefits at the rate of $112.00 per week for the period commencing April 17, 1982, to November 5, 1983.
(2) Employer, a self-insurer, shall pay to the claimant permanent partial disability for a period of ten (10) weeks at the rate of $112.00 per week, for five percent (5%) permanent partial disability to the upper left extremity.
(3) All medical services and supplies required by the nature of claimant's injury to a scheduled member, as provided by Mississippi Code Annotated Section 71-3-15 (1972). Defendant, Employer, a self-insurer, shall not be liable for payment of medical care and treatment rendered by or at the direction of Dr. Barnes, Dr. Guild or Dr. Vise, nor shall the Defendant be liable for travel expenses incurred in seeking medical treatment from or at the direction of Dr. Barnes, Dr. Guild or Dr. Vise.

I.
Jordan first argues on appeal that the Circuit Court erred in its determination of the duration of his temporary disability. The Commission, based on Dr. Vise's opinion of when the claimant reached maximum medical recovery, awarded Jordan temporary total disability benefits at the rate of $112.00 per week, beginning April 17, 1982, through September 3, 1985. The Circuit Court, apparently relying instead on Dr. Attix' opinion, awarded Jordan temporary total disability benefits at the rate of $112.00 per week for the period commencing April 17, 1982 and ending November 5, 1983.
Miss. Code Ann. § 71-3-17(b) (1988) provides for temporary total disability as follows:
In case of disability, total in character but temporary in quality, sixty-six and two-thirds percent (66 2/3%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this chapter, shall be paid to the employee during the continuance of such disability... .
In Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss. 1991) this Court addressed Miss. Code Ann. § 71-3-51 (1972) and reiterated that the Circuit Court must defer to the Commission's findings, where there is substantial evidence to support them. We find that there is substantial evidence in Dr. Vise's testimony to support the Commission's determination that September 3, 1985, was the date claimant reached maximum medical improvement. Accordingly, we reverse the circuit court's findings.

*183 II.
Jordan further asserts that the Circuit Court erred in its determination of the nature and extent of his permanent disability and/or loss of wage-earning capacity. The Commission had ordered permanent partial disability benefits at $112.00 per week beginning September 4, 1985, and continuing for a period not to exceed 450 weeks. The Circuit Court awarded Jordan permanent partial disability for a period of ten weeks at the rate of $112.00 per week for five percent (5%) permanent partial disability to the upper left extremity.
Jordan cites as the applicable statute Miss. Code Ann. § 71-3-17(c)(25) (1972), which states:
In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds (66 2/3%) percent of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this chapter, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability... . Such payments shall in no case be made for a longer period than four hundred fifty (450) weeks.
Dr. Vise set Jordan's permanent partial disability at 21%, whereas Dr. Attix set it at 5% to a scheduled member. Both Dr. Vise and Dr. Guild also assigned permanent impairment to the body as a whole. Dr. Vise testified as follows:
Q: On your rating of 21 percent permanent partial disability to the body as a whole, would you state for the record what parts of his body were involved to make up that rating, the anatomy of Thomas Jordan's body?
A: Running in the base of his neck on the left side through his shoulder blade, scapula and posterior chest wall, out over his shoulder and down into his hand and fingers. It was that whole left upper extremity, that's a unit, if you want to call it, and its attachments to the body, the unit being the hand and arm and how it's attached to the body.
Hercules argues that Jordan suffered only a five percent (5%) permanent partial impairment to the upper left extremity based upon both physicians' testimony that the only part of his body affected was his arm. Both the administrative judge and the Commission agreed that the amount of permanent partial disability would be $112.00 per week beginning September 4, 1985, and to continue for not longer than 450 weeks. The Circuit Court limited the time to 10 weeks.
When an injury occurs which is related to the body as a whole, scheduled member standards do not apply. Miss. Code Ann. § 71-3-17(c)(25). Since Jordan's injury involved not only his arm, but also his upper shoulder and back, it must therefore be treated as an injury to the body as a whole. Russell v. Southeastern Utilities Co., 230 Miss. 272, 92 So.2d 544 (1957). Where there is a finding of permanent partial disability, the claimant bears the burden of making a prima facie showing that he has sought and has been unable to find work "in the same or other employment" pursuant to Miss. Code Ann. § 71-3-3(i). (Emphasis added) Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss. 1980). When the claimant, having reached maximum medical recovery, reports back to his employer for work, and the employer refuses to reinstate or rehire him, then it is prima facie that the claimant has met his burden of showing total disability. The burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage earning capacity.
Generally, "disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment. We addressed wage loss and permanent partial disability benefits in Piper Industries, Inc. v. Herod, 560 So.2d 732 (Miss. 1990). After finding Herod permanently disabled from any job which included exposure to sulfur dioxide, the Commission awarded Herod permanent partial disability benefits pursuant to Miss. Code Ann. § 71-3-3(i) (1972). Id. at 734. After discussing Pontotoc Wire Products Co. v. *184 Ferguson, 384 So.2d 601 (Miss. 1980), this Court affirmed the Commission's order based on Herod's injury and his reasonable effort to find comparable employment. Id. at 735.
Jordan earned wages which averaged $348.78 a week at Hercules. He described his job search as follows: (1) in October, 1982, and again in May, 1984, Jordan asked for light duty at Hercules but was denied; (2) he applied for positions as a gas attendant, cashier, laborer, salesman and mechanic's helper; (3) in October, 1985, Allied Enterprises hired him as a driver and he earns $4.00 per hour and works fifteen hours per week. Again, there is substantial evidence to support the Commission's finding and the judgment of the Circuit Court is reversed and the Commission's order is reinstated awarding permanent partial disability in the amount of $112.00 per week beginning September 4, 1985, and to continue for not longer than 450 weeks.

III.
Jordan further contends that the Circuit Court erred in its determination of Hercules' liability for medical services. Jordan's injury happened on or about April 17, 1982. Miss. Code Ann. § 71-3-15(1) (1972) provides as follows:
The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require. If the employer fails to provide the same after request by the injured employee, such injured employee may do so at the expense of the employer. The employee shall not be entitled to recover any amount expended by him for such treatment or services, except in emergency cases, unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman, having knowledge of such injury, shall have neglected to provide the same. (emphasis added).
Dr. Attix never recommended that Jordan undergo surgery. Dr. Vise did recommend surgery and Jordan requested authorization which Hercules denied. Hercules then suggested that he return to Dr. Attix, who prescribed no further treatment. Jordan contends that the excruciating pain he suffered, coupled with his inability to work, created an emergency situation requiring surgery. Furthermore, he contends that because the company refused to authorize payment for Dr. Vise's treatment, it should be liable for his costs in full pursuant to § 71-3-15.
The Circuit Court upheld the Commission's finding that no such emergency situation existed and that the medical services provided by Dr. Barnes, Dr. Vise and Dr. Guild were unauthorized and therefore noncompensable.
Miss. Code Ann. § 71-3-15(5) (1972) also provides that:
An injured worker who believes that his best interest has been prejudiced by the findings of the physician designated by the employer or carrier shall have the privilege of a medical examination by a physician of his own choosing, at the expense of the carrier or employer. Such examination may be had at any time after injury and prior to the closing of the case, provided that the charge shall not exceed one hundred ($100.00) and shall be paid by the carrier or employer where the previous medical findings are upset, but paid by the employee if previous medical findings are confirmed.
The Commission ordered that Dr. Guild and Dr. Vise be paid $100.00 as provided in Miss. Code Ann. § 71-3-15(5) (1972). The Circuit Court's order failed to mention Section 71-3-15(5) or the $100.00 payment.
Jordan contends that Dr. Vise's examination contradicted Dr. Attix' previous findings and since he requested company authorization, Hercules should be held liable for payment. Hercules argues that Jordan chose Dr. Attix and was not entitled to a second opportunity to choose a physician.
*185 The administrative judge's order of January 26, 1988, provided in part that the company shall:
Pay for, furnish and provide to the claimant all necessary medical services and supplies as the nature of his injury and the process of his recovery may require, as provided by the Act, including specifically the charges for medical treatment by Dr. Guy Vise, whose treatment of the claimant was sanctioned by the employer's refusal and neglect to provide proper medical treatment to the claimant.
The Commission reversed this ruling in its October, 1988 order, which the circuit court affirmed. It should be remembered that the Commission based its determinations on the findings of Dr. Guy Vise, the medical treatment and the disability and impairment of the claimant. The Commission did not base its opinion on the findings of Dr. Attix, who discharged claimant without any determination of permanent injury and said he did not need any further treatment after November 5, 1982. Dr. Vise testified that Jordan reached maximum medical improvement on September 3, 1985. It is obvious that the Circuit Court chose to believe Dr. Attix' opinion and the Commission chose to believe Dr. Vise's opinion. The Commission based its opinion entirely upon Dr. Vise, but reversed the Administrative Law Judge's ruling requiring payment of Dr. Vise's medical services and allowed one $100.00 payment.
The Court finds that whenever the Commission bases its findings on the opinion of a treating physician not authorized by the employer, and when the employer has refused to authorize or pay for, or otherwise provide proper medical treatment for the claimant, then those treatments shall be covered. Miss. Code Ann. § 71-3-15(5) (1972), comes into play only when the claimant seeks treatment which is not authorized by the employer and not necessary for his recovery. Only in that situation, will the claimant be limited to the $100.00 credit for the treatment received. To say otherwise would mean that the claimant would have to pay out of his benefits for the care and treatment which should have been authorized by the employer for the injuries incurred while he was employed.
The employer has the ability to request at any time independent medical examinations in preparation of its defense of the case in denying benefits and treatment. The claimant, however, has only the means to pay from his own benefits such other treatment which may be necessary when the employer fails to grant to the claimant the medical treatment needed. There is not substantial evidence to support the findings of the Commission and the Circuit Court. Therefore, those rulings concerning the payment of Dr. Vise are hereby reversed and the Administrative Judge's determination reinstated under this issue.

IV.
Finally, Jordan argues that pursuant to Miss. Code Ann. § 71-3-37(5), the Circuit Court erred in failing to assess the statutory penalty and interest against Hercules for payments due him. The statute provides as follows:
If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (2) of this section, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subdivision (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
This Court in South Central Bell v. Aden, 474 So.2d 584 (Miss. 1985) explained, "[Section 71-3-37(5)] authorizes imposition of the ten percent penalty upon nonpayment of compensation without an award for more than fourteen days after it becomes due as a matter of law or upon the employer's failure to file a notice to controvert within fourteen days after he has knowledge of the alleged injury." Aden, 474 So.2d at 596-97. See also M & J Oil Co. v. Wilson, 507 So.2d 1292, 1293 (Miss. 1987).
*186 In Aden, this Court set forth three circumstances where an employer may be exempt from the penalty as follows:
[F]irst, that the employer has paid compensation installments within fourteen days of when they became due; second, and in the alternative, that the employer has filed a notice to controvert within fourteen days of the day he received notice of the injury; or, third, that non-payment, if it occurred, was as a result of conditions over which the employer had no control.
Aden, 474 So.2d at 597.
Jordan contends that when Hercules stopped making payments to him on August 21, 1983, the cessation of benefits fell under none of the categories as set forth above.
In its November, 1986, order, the Commission affirmed the assessment of the ten percent (10%) statutory penalty against Hercules. The Commission's 1988 order failed to mention the penalty as did the Circuit Court's final order in March 1989. The Commission's failure to address this issue in its 1988 order and the lower court's failure to do same amounted to an oversight and the 10% penalty should be affirmed.
ORDER OF CIRCUIT COURT IS REVERSED AS TO PAYMENT OF PERMANENT PARTIAL DISABILITY AND ORDER OF THE WORKERS' COMPENSATION COMMISSION IS REINSTATED THEREASTO; ORDERS OF CIRCUIT COURT AND WORKERS' COMPENSATION COMMISSION REVERSED AS TO PAYMENT OF MEDICAL SERVICES; ORDER OF WORKERS' COMPENSATION COMMISSION AFFIRMED AS TO ASSESSMENT OF TEN PERCENT (10%) STATUTORY PENALTIES AGAINST HERCULES, INC.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.