919 So.2d 163 (2005)
Ada L. BOYD, Appellant,
v.
MISSISSIPPI WORKERS' COMPENSATION Commission Self-Insurer Guaranty Association, Appellee.
No. 2004-WC-00614-COA.
Court of Appeals of Mississippi.
June 7, 2005.
*164 Frank H. Shaw, Jr., Kosciusko, attorney for appellant.
Virginia S. Gautier, Jackson, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. On September 14, 1995, Ada L. Boyd was injured while working for Baldwin Piano and Organ Company. She was compensated for temporary total disability due to this on-the-job injury. Some time after the benefits for temporary total disability ceased, Boyd sought additional benefits, arguing that she suffered permanent partial disability and a resulting loss of wage earning capacity due to the September 14, 1995 injury. After various cancelled hearings and continuances, a hearing with the administrative law judge was finally held on April 12, 2000, and on October 23, 2000, the administrative law judge denied Boyd's claim for benefits. Boyd appealed, and on March 27, 2001, the Mississippi Workers' Compensation Commission affirmed the decision of the administrative law judge. On April 19, 2001, Boyd appealed the Commission's decision to the Circuit Court of Leflore County, and on February 19, 2004, the circuit court affirmed the decision of the Commission.
¶ 2. Aggrieved by the judgment of the circuit court, Boyd now appeals, raising the following two issues, which we quote verbatim:
I. WHETHER OR NOT AN INJURED CLAIMANT REMAINS TEMPORARILY AND TOTALLY DISABLED UNTIL ACTUALLY NOTIFIED OF THE TREATING PHYSICIAN'S RELEASE TO RETURN TO WORK SENT DIRECTLY TO THE EMPLOYER.
II. WHETHER OR NOT THE FINDING OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION THAT CLAIMANT FAILED TO PROVE A PRIMA FACIE CASE FOR LOSS OF WAGE EARNING CAPACITY IS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 3. Finding no reversible error, we affirm the judgment of the circuit court.

FACTS
¶ 4. Ada L. Boyd had worked for the Baldwin Piano and Organ Company in Greenwood, Mississippi, since 1976. After *165 roughly twenty years of employment with Baldwin, Boyd was terminated around the end of May 1996 for failure to report to work. The circumstances surrounding this termination set up the facts of this case.
¶ 5. On September 14, 1995, while sanding some wood that was to be incorporated into a piano, Boyd accidentally backed into the sander. Her shirt was caught in the sander, she was pulled up against the machine, and she fell to the floor after her shirt was torn off by the sander. This caused her to suffer injuries to her right side, back, and arm, for which she began to receive treatment that very day. Boyd's medical expenses were paid, and Boyd was paid workers' compensation benefits of $176.27 per week for temporary total disability from September 14, 1995 to May 23, 1996. The date of her maximum medical improvement was determined by her treating physician, Dr. Dowen Snyder, to be May 23, 1996.
¶ 6. After Dr. Snyder made this determination, he notified Baldwin that Boyd was released to return to work. However, Boyd did not contact Baldwin about returning to work, nor did she make any attempt to return to work within three days, as required by company policy. After six days of not hearing from Boyd, Baldwin terminated her employment, giving as the reason for termination that Boyd failed to return to work or contact Baldwin within three days of being released to return to work.
¶ 7. In her first petition to controvert, filed March 21, 1997, Boyd alleges that she suffered permanent disability and resulting loss of wage earning capacity due to the September 14, 1995 injury. Baldwin answered, denying that Boyd suffered any permanent disability and loss of wage earning capacity. A short time later, on March 26, 1997, Boyd's original attorney was allowed to withdraw. On December 8, 1997, Boyd's second attorney was allowed to withdraw. After some time had passed, on January 27, 1998, Boyd's claim was dismissed for failure to prosecute. Roughly a year later, on January 14, 1999, Boyd's claim was reinstated after she secured another attorney. As a part of obtaining this reinstatement of her claim, Boyd filed a second petition to controvert, containing some different information than the first petition to controvert. Baldwin again answered, denying that Boyd suffered permanent disability and loss of wage earning capacity.
¶ 8. As should be obvious from the dates listed in the discussion above and the date of this appeal, almost ten years have passed since the original injury and this present appeal. During the time in which Boyd received benefits for temporary disability, she received ongoing treatment from Dr. Millard Costilow, Dr. Snyder, and Dr. Lynn Stringer. After Dr. Snyder determined that Boyd had reached maximum medical improvement and after Boyd's subsequent termination, she continued to complain of various ongoing symptoms and problems. Boyd worked for a brief time as a sitter for an elderly couple, she made a single inquiry about employment at Wal-Mart, and she did some substitute teaching; but beyond these things, Boyd made no other attempts at securing employment during the five years in between her injury and the decision of the Commission. Boyd cited an inability to work which was due to permanent disability, and that permanent disability was alleged to have been caused by her injury at work on September 14, 1995.
¶ 9. Yet, every doctor who treated Boyd opined that there was no physical evidence to back up or substantiate her complaints about her level of constant pain and that the nature and extent of her complaints regarding pain and the like were out of *166 proportion to what all of her diagnostic tests revealed. One doctor declared that Boyd's problem was more psychological than physical, and not a single doctor opined that her alleged ongoing problems were causally related to her September 14, 1995 injury. This same doctor also opined that, in light of the largely psychological nature of Boyd's continuing complaints, Boyd should be encouraged to return to some kind of work, instead of being allowed to continue idly ruminating upon the extent of the pain she felt (a pain which, according to Boyd, was constant, extreme, and unresponsive to treatments including steroid injections and various pain medications).
¶ 10. Ultimately, in making its decision, the Commission accepted the administrative judge's findings that all of the doctors opined that Boyd was not permanently disabled and that Boyd made no reasonable attempt to secure employment as required to established a prima facie case of permanent disability and resulting loss of wage earning capacity.

LEGAL ANALYSIS
I. WHETHER OR NOT AN INJURED CLAIMANT REMAINS TEMPORARILY AND TOTALLY DISABLED UNTIL ACTUALLY NOTIFIED OF THE TREATING PHYSICIAN'S RELEASE TO RETURN TO WORK SENT DIRECTLY TO THE EMPLOYER.
¶ 11. Boyd argues that she did not receive notice that she was released to return to work until after she had been terminated. She also argues that we should construe our law to hold that an injured claimant remains temporarily and totally disabled until receiving actual notice that he or she is released to return to work.
¶ 12. The Commission argues that it strains credibility to think Boyd was completely unaware that her physician had released her to return to work, and that in any event, the Commission's decision was supported by substantial evidence.

STANDARD OF REVIEW
¶ 13. Our standard of review of findings of the Commission is very deferential. In this regard we have held:
The findings and order of the Workers' Compensation Commission are binding on this Court, and all other appellate courts, so long as they are supported by substantial evidence. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988); Champion Cable Const. Co., Inc. v. Monts, 511 So.2d 924, 927 (Miss.1987); Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1332 (Miss.1986); Georgia-Pacific Corp. v. Veal, 484 So.2d 1025, 1027 (Miss.1986); Evans v. Marko Planning, Inc., 447 So.2d 130, 132 (Miss.1984); see also Dunn Mississippi Workers' Compensation § 286, 288 (3d ed.1982). "This is so, even though the evidence would convince this Court otherwise, were we the fact finder." Fought, 523 So.2d at 317; Georgia-Pacific Corp., 484 So.2d at 1028 (quoting Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss.1985)). This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Fought, 523 So.2d at 317; Myles v. Rockwell International, 445 So.2d 528, 536 (Miss.1983); Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss.1975).
South Mississippi Elec. Power Ass'n v. Graham, 587 So.2d 291, 294 (Miss.1991).
*167 ¶ 14. Thus, challenges to the findings of the Commission face a very high burden in our standard of review, and we will only reverse where the Commission's findings are clearly erroneous or unsupported by substantial evidence. Id.

DISCUSSION
¶ 15. We find Boyd's argument under this issue to be rather strained, and we also find much of Boyd's argument here to be extraneous to the issue as it is framed. Citing to the case of Jordan v. Hercules, Inc., 600 So.2d 179 (Miss.1992), Boyd declares, "[T]he inaction of Baldwin Piano and Organ Company is equivalent to a refusal to rehire her, thereby raising a presumption of total disability up, until at least the date, of the Administrative Judge's Order of October 23, 2000." In making this argument, we believe Boyd has misunderstood or, at least, misapplied the holding of the Jordan case.
¶ 16. In a recent case discussing Jordan, we held:
[U]nder Jordan, it is only an employee who is suffering from a permanent work-related disability who gains a presumption that the effects are totally disabling. The Jordan rule creates a presumption that a permanent injury is totally disabling; it does not create a presumption that someone who had a temporary injury has a permanent one.

Wesson v. Fred's Inc., 811 So.2d 464, 471(¶ 35) (Miss.Ct.App.2002) (emphasis added). Looking back to the quote from Boyd's argument in light of the quote from Wesson above, it appears that she has misunderstood the Jordan holding in almost the same way as did the claimant in the Wesson case. The Jordan presumption only arises after the fact finder has determined the claimant to suffer from a permanent work-related disability. Id.
¶ 17. The Commission in the case sub judice did not find that Boyd suffered from a permanent work-related disability; therefore, the threshold requirement for the "Jordan presumption" is lacking in this case. Thus, Boyd's argument under this issue lacks merit, because the Jordan presumption is inapplicable to the case sub judice.
¶ 18. Moreover, the particular aspect of the Jordan case dealing with the presumption of total disability has been challenged as incomplete by subsequent precedent of this Court. The Wesson case also speaks to this issue:

Jordan is one of those occasional cases in the workers' compensation area that in attempting to restate former case law may just not have fully described it. To abandon elements of court-created presumptions is within the prerogative of the Supreme Court, but later precedents of that same court reinvigorated the older law which suggests Jordan was incomplete. . . . In at least one post-Jordan precedent, the Supreme Court recognized that Jordan had given only an abridged form of the presumption.
Wesson, 811 So.2d at 470 (¶ 33-34).
¶ 19. This recognition of incompleteness in the Jordan court's formulation of the possible presumption of total disability tends to further support our conclusion that Boyd's argument lacks merit, because her argument rests exclusively upon the Jordan case without reference to any subsequent precedent discussing Jordan or the possible presumption of total disability. In addition, we note that the Jordan case does not stand for the proposition that an employer's inaction should be construed as equivalent to a refusal to rehire. While we can certainly envision cases in which an employer's inaction might possibly be construed *168 in such a way, we do not find the Jordan case to speak to that particular issue.
¶ 20. We also note that, while this issue states a challenge to an order of the Commission, much of Boyd's argument under this issue has the savor of a claim for wrongful termination as opposed to the denial of workers' compensation benefits. Boyd frequently points out the fact that she was terminated before she had actual notice that she had been released to return to work and that Baldwin's inaction in aiding Boyd's return to employment inured to her detriment.
¶ 21. On this point, we do not believe that Boyd can reasonably be heard to complain of Baldwin's inaction in the face of her own inaction. While it is true that the employer did not contact Boyd and remind her that it was time for her to come back to work, it is also true that Boyd made no effort to contact Baldwin or to begin working again. This, we believe is required by the statute, in that it declares, "[T]he claimant bears the burden of making a prima facie showing that [s]he has sought and has been unable to find work `in the same or other employment' pursuant to Miss.Code Ann. § 71-3-3(i)." Jordan, 600 So.2d at 183. This requirement falls squarely upon the shoulders of the claimant, in this case, Boyd.
¶ 22. While the record does not establish that Dr. Snyder said to Boyd, "I hereby release you to return to work," the record is clear that on May 22, 1996, Dr. Snyder informed Boyd that his treatment of her was complete. Whatever the exact words that passed between Dr. Snyder and Boyd, we find in the record substantial evidence to support the Commission's conclusion that Boyd did not make an effort to return to work or secure employment sufficient to create a prima facie case of permanent partial disability.
¶ 23. In addition, given the facts of this case, we cannot say that Baldwin's failure to contact Boyd amounts to a refusal to rehire. Boyd had the burden to seek the same employment and, failing that, to seek other employment. Id. She failed to do this when she did not call Baldwin or make any other attempt to return to work at Baldwin. Had she attempted to return to work and had Baldwin refused her, then this case would be different; but as this case stands, given the law quoted above, Baldwin's supposed "inaction" is immaterial. In light of the argument she makes under this issue, it is Boyd's inaction, rather than Baldwin's, that matters here. Having failed to take the required action of seeking to return to work, Boyd cannot now be heard to complain that Baldwin failed to insist on her doing what she should have done on her own initiative.
¶ 24. While we appreciate and generally agree with the Commission's comments about the desirability of employers working together with their employees to see that the employment relationship is promptly restored after maximum medical improvement, we do not believe that Baldwin's alleged inaction in this case should somehow be taken to have excused Boyd's failure to make a prima facie showing that she actually sought and was denied employment with Baldwin.
¶ 25. This issue is without merit.

II. WHETHER OR NOT THE FINDING OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION THAT CLAIMANT FAILED TO PROVE A PRIMA FACIE CASE FOR LOSS OF WAGE EARNING CAPACITY IS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 26. Boyd argues that the Commission's finding that she failed to demonstrate loss of wage earning capacity was *169 not supported by substantial evidence. The Commission argues that the findings of the Commission were supported by substantial evidence.

STANDARD OF REVIEW
¶ 27. Our standard of review of this second issue is the same standard of review applied to the first issue. Thus, in considering this issue, we will review the record to determine if the Commission's findings are clearly erroneous or unsupported by substantial evidence. Graham, 587 So.2d at 294.

DISCUSSION
¶ 28. This issue need not detain us long, because the record shows very clearly that the findings of the Commission were supported by substantial evidence. In addition, some of our discussion of Issue I is applicable to this issue as well. As noted above, literally every doctor declared that Boyd suffered no permanent disability that could be attributed to the September 14, 1995 injury. In addition, it is clear that Boyd made no real effort to secure employment, as required in order to establish a prima facie case for loss of wage earning capacity. She sat with an elderly couple with her daughter for a number of weekends, she made some kind of an inquiry at Wal-Mart (where she merely inquired but did not fill out an application for employment), and she attempted to do some substitute teaching. But, she did nothing else by way of seeking employment in the five years in between her termination and the order of the administrative law judge.
¶ 29. Boyd also argues that the beneficial purposes of the Workers' Compensation Act require courts to construe the act liberally in favor of providing benefits. In support of this, Boyd quotes the case of Sharpe v. Choctaw Electronics Enterprises, 767 So.2d 1002 (Miss.2000), as follows, "It is well established that the provisions of the Mississippi Workers' Compensation statute are to be construed liberally in favor of the Claimant and in favor of paying benefits for a compensable injury." Id. at 1006(¶ 18). We have no wish to argue with this principle, for we find it to be well established in our law. However, we do find that Boyd has not done full justice to the phrase quoted above "for a compensable injury." Id.
¶ 30. While the Act should, indeed, be liberally construed, the Act should not to be construed so liberally as to provide benefits for injuries that are not compensable under the Act, such as those injuries that are not causally related to the employee's work. Indeed, such a result would appear to contravene the beneficial purposes of the act by diverting resources away from recipients who meet the legal criteria for receiving benefits. In any event, as true as the principle of liberal construction of the Act may be, we find that Boyd was, in fact, justly and appropriately compensated for those injuries that were compensable, in that she received benefits from the time of her injury (September 14, 1995) to the time her physician declared her to have achieved maximum medical improvement (May 23, 1996). Therefore, while Boyd correctly states the principle of liberally construing the Act, this principle does not help Boyd's argument here, given the facts of this case.
¶ 31. In conclusion, we find that the record very clearly shows that the findings of the Commission were supported by substantial evidence. In the face of voluminous contrary medical evidence and testimony, the only thing Boyd has to offer is the mere assertion of her own unsupported, subjective conclusions about the alleged long-term effects of the injury she suffered in September of 1995. That falls far short of what is required to justify *170 reversal of the Full Commission, given our standard of review.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, AND ISHEE, JJ. concur. BARNES, J., NOT PARTICIPATING.