960 So.2d 549 (2006)
IMPERIAL PALACE CASINO and Great American Insurance Company, Appellants
v.
Johnie E. WILSON, Jr., Appellee.
No. 2006-WC-00056-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied May 1, 2007.
*550 Meri Elizabeth Barr, John S. Gonzalez, Gulfport, attorneys for appellants.
James Kenneth Wetzel, Gulfport, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
IRVING, J., for the Court.
¶ 1. This appeal arises out of a worker's compensation claim filed against Imperial Palace Casino by Johnie Wilson, Jr. On February 11, 2004, an administrative judge determined that Wilson's claim was compensable. Thereafter, Imperial Palace and Wilson both appealed that ruling to the Mississippi Workers' Compensation Commission (the Commission). The Commission found that Wilson's claim was compensable, and, as urged by Wilson, ordered Imperial Palace to pay full disability benefits to Wilson, rather than the partial benefits ordered by the administrative judge. Imperial Palace then appealed the Commission's decision to the Harrison County Circuit Court, which affirmed. Aggrieved, Imperial Palace now appeals to this Court and asserts four allegations of error: first, that there was no causal relationship between Wilson's injury and his work; second, that a letter from Wilson's attorney *551 was insufficient to constitute a return to work; third, that Wilson's job search was not reasonable; and fourth, that Wilson's refusal to cooperate with Imperial Palace's vocational expert should have been taken into account by the Commission.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Wilson was hired by Imperial Palace in February of 2001. At that time, he suffered from chronic back pain, possibly as a result of an accident with a former employer. As part of his work for Imperial Palace, Wilson had to carry bags of coins weighing twenty to thirty pounds. Wilson testified that he was told by management at Imperial Palace to carry these bags on his shoulder. Wilson indicated that, on average, he might have to carry thirty of these bags each night he worked.
¶ 4. Wilson worked a full shift on October 25 and on October 26 of 2002. On October 27, Wilson woke up with a stiff neck. Despite his discomfort, he returned to work and worked throughout the week, although he testified that his pain intensified as the days passed. On October 31, 2002, Wilson saw Dr. Pacita Coss, a general physician. Dr. Coss noted that Wilson appeared to be in severe pain during their meeting. Wilson worked on November 1, but his pain was so severe on November 2 that he was unable to go to work. On November 4, Dr. Coss sent Wilson to a hospital emergency room due to the severity of his pain.
¶ 5. On November 18, Wilson met with Dr. Michael Lowry, a neurosurgeon. Wilson's intake form from the visit indicates that he was "probably" injured at work as he lifted bags of coins. On November 26, Wilson underwent surgery, which apparently significantly reduced his pain, although it did not ease the pain entirely. On May 7, 2003, Dr. Lowry indicated that Wilson could return to work on May 19, 2003, with some restrictions as to his activity.[1] In a letter dated May 16, 2003, Wilson's attorney asked Dr. Lowry to review an attached copy of Wilson's job duties and indicate whether Wilson could return to those duties. In mid-August, Dr. Lowry sent a response to Wilson's attorney, detailing which job duties Wilson could and could not perform. In that letter, Dr. Lowry indicated that Wilson could return to work, but he would not be able to perform all of the activities that he had performed prior to the injury, especially carrying around bags of coins on his shoulder.
¶ 6. Despite Dr. Lowry's opinion, Wilson never continued his work at Imperial Palace. Wilson testified that he did not return to his job because he thought that, because of his restrictions, Imperial Palace would not want him to return to work. On September 4, 2003, Wilson's attorney sent a letter to Imperial Palace, requesting that Imperial Palace contact Wilson if it had a job he could perform. Imperial Palace never responded to the letter. Wilson testified that he enjoyed his job at Imperial Palace, and would have continued working if he had not been injured.
¶ 7. According to Wilson, he attempted to locate employment with numerous companies in September of 2003. Wilson also made several follow-up attempts with some of the companies. Tommy Sanders, a vocational rehabilitation expert, testified on behalf of Imperial Palace. Sanders claimed that there were several jobs he had located for which Wilson was qualified. Sanders testified that he believed that Wilson's efforts to secure employment were *552 "sporadic." Wilson was asked to work with Sanders to find employment, but he refused because of how close to the initial hearing the request was made.
¶ 8. Additional facts, as necessary, will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
Standard of Review
¶ 9. When reviewing the Commission's determination, the Commission is "the ultimate judge of the credibility of witnesses." Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461(¶ 27) (Miss.2005) (quoting Hardaway Co. v. Bradley, 887 So.2d 793, 795(¶ 11) (Miss.2004)). As a result, we "must defer to decisions by the Commission on issues of fact and credibility unless the Commission commits prejudicial error." Id. (quoting Hardaway, 887 So.2d at 795(¶ 11)). We "must affirm . . . where substantial evidence supports the Commission's order." Id. (quoting Hardaway, 887 So.2d at 795(¶ 11)). Therefore, we will reverse only if we find that the Commission's order was "clearly erroneous and contrary to the overwhelming weight of the evidence." Id. (quoting Hardaway, 887 So.2d at 795(¶ 11)).
¶ 10. After a finding of permanent partial disability, a "claimant bears the burden [in proving total disability] of making a prima facie showing that he has sought . . . work . . . pursuant to Mississippi Code Annotated section 71-3-3(i)" (Rev.2000). McNeese v. Coopper Tire & Rubber Co., 627 So.2d 321, 325 (Miss.1993) (quoting Jordan v. Hercules, Inc. 600 So.2d 179, 183 (Miss.1992)). However, when a claimant, after reaching maximum medical recovery, "reports back to his employer for work, and the employer refuses to reinstate or rehire him, then it is prima facie that the claimant has met his burden of showing total disability. The burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage earning capacity." Id. (quoting Jordan, 600 So.2d at 183).
1. Causal Relationship
¶ 11. In its first allegation of error, Imperial Palace claims that the court erred in affirming the Commission's determination that there was a causal relationship between Wilson's work and his injury. Imperial Palace bases its allegation on evidence that Wilson did not tell Dr. Lowry that his injury had been caused at work. Imperial Palace claims that Wilson "merely mentioned in his in-take form that he probably was injured at work and that he had been carrying coins the day before but it did not bother him until the next day." Imperial Palace also contends that Dr. Lowry testified in his deposition that "a disc herniation could be caused by sleeping the wrong way . . . or equally by many other factors as well." Imperial Palace acknowledges Dr. Lowry's conclusion that Wilson's employment contributed to his injury, but dismisses that opinion as "mere `speculation.'"
¶ 12. While it is true that Wilson denied being injured at work during his first meeting with Dr. Lowry, Dr. Lowry further explained in his deposition that he and Wilson both thought that Wilson's work likely caused his injury: "I remember him talking to me about this, wanting to know what I thought about that. And he was wondering it, too: `Well, did my kind of work ' `Since you don't want me to lift these heavy bags, did that have anything to do with [the injury]?'" Although Dr. Lowry spoke in terms of speculation during his deposition, he made a much stronger statement in his letter sent to Wilson's attorney: "I do feel that the *553 kind of work that he was doing prior to the onset of this problem, did contribute to the cervical disc herniation, at the very least." Furthermore, although Dr. Lowry's notes from his first meeting with Wilson indicate that Wilson said he did not suffer a neck injury at work, Dr. Lowry immediately thereafter noted that "[i]n his job he does have to carry bags of coins and he frequently puts them up on his shoulder to carry them." Dr. Lowry also testified that the fact that Wilson put on his intake form that he probably injured himself at work was significant. Dr. Lowry testified that Wilson's failure to mention that he was injured at work during their actual meeting could have been a result of the severe amount of pain that Wilson was in at the time: "It might have distracted him some in my  in his answering my questions. He was very uncomfortable that day."
¶ 13. Wilson testified that he told Dr. Lowry at their first meeting that the "only thing that I have done around my neck is carry bags." Imperial Palace notes several times that Wilson suffered from a preexisting back condition, but we note that Wilson clearly testified that he had never had a neck injury. A back injury is not the same as a neck injury. Although Dr. Lowry released Wilson to return to work on May 19, 2003, Wilson testified that "[Dr. Lowry] told me he didn't advise it. He said that I could reinjure myself, you know. That he did not advise doing that . . . the way I remember it he didn't advise me to go back to doing that type of work."
¶ 14. Referring to when he began to feel pain, Wilson testified that he had no pain prior to waking up that day. However, in Wilson's medical records from Dr. Coss's office, Dr. Coss writes: "Johnie is having a lot of pain in his neck which goes down his shoulder and his right hand. He says he hasn't had this for a couple of years." This statement indicates that Wilson had suffered from a similar injury in the past. No further mention of any prior injury to Wilson's neck is made anywhere in the record.
¶ 15. In order for Wilson's claim to be compensable, his injury need only be connected to his employment. Sharpe v. Choctaw Elecs. Enters., 767 So.2d 1002, 1005(¶ 13) (Miss.2000). An employee's work does not need to be the "sole source of the injury." Id. (quoting Chapman v. Hanson Scale Co., 495 So.2d 1357, 1360 (Miss.1986)). The Mississippi Supreme Court specifically noted: "Injury . . . arises out of and in the course of employment even when the employment merely aggravates, accelerates or contributes to the injury." Id. (quoting Chapman, 495 So.2d at 1360).
¶ 16. Because Wilson's injury need not have been caused solely by his work at Imperial Palace, this issue is without merit. We note that Wilson could attribute no other cause to his sudden pain, other than carrying coins on his shoulder. We further note that Dr. Lowry specifically opined that "I do feel that the kind of work that he was doing prior to the onset of this problem, did contribute to the cervical disc herniation, at the very least." (emphasis added). By contrast, Imperial Palace presented no evidence that Wilson's injury was not caused by his work at Imperial Palace, or that the work did not contribute to Wilson's injury. Clearly, substantial evidence exists from which the Commission could have determined that Wilson's employment caused his injury. This contention of error is without merit.
2. Attempt to Return to Work
¶ 17. In this allegation of error, Imperial Palace claims that the letter sent by Wilson's attorney requesting that Imperial Palace notify Wilson of any job it had for him was insufficient to satisfy a presumption *554 of total loss of wage earning capacity.[2] Imperial Palace claims that the letter "is not the equivalent of the Claimant actually presenting himself and reporting back to work." As support, Imperial Palace cites numerous cases where the presumption was not raised because an employer did not rehire a former employee sua sponte. In other words, in all the cases cited by Imperial Palace, the employee did not attempt to contact his former employer and seek reemployment.
¶ 18. The cases cited by Imperial Palace are clearly distinguishable on their facts. Wilson did, in fact, take action in this case to seek reemployment with Imperial Palace. While Wilson did not physically report to Imperial Palace, his attorney sent a letter to Imperial Palace on his behalf explicitly requesting that Imperial Palace notify Wilson if it had a job for him. Imperial Palace's failure to respond in any way to this letter was a failure to reemploy Wilson. No authority is cited by Imperial Palace to indicate that contact by mail, rather than in person, is insufficient to constitute an attempt to return to work. In fact, one of the cases cited by Imperial Palace, Boyd v. Miss. Workers' Comp. Comm'n Self-Insurer Guar. Ass'n, 919 So.2d 163, 168(¶ 23) (Miss.Ct.App.2005), explicitly notes: "Boyd had the burden to seek the same employment . . . [and] failed to do this when she did not call [her employer] or make any other attempt to return to work. . . ." Clearly, this opinion indicates that a phone call or "any other attempt" might constitute an attempt to return to work.
¶ 19. Imperial Palace claims that allowing the letter to constitute a return to work will "dissuade employers from rehiring injured workers." Imperial Palace fails to explain the logic behind this statement, and we are unpersuaded by the argument. If anything, our holding encourages employers to rehire injured workers. Clearly, if Imperial Palace had responded to the letter sent by Wilson's attorney with an offer of employment, the presumption of total disability would not have been raised, as the presumption operates only when an employer refuses to rehire an injured worker. Imperial Palace's argument to the contrary is without merit. This allegation of error is also denied.
3. Job Search
¶ 20. In its third contention of error, Imperial Palace claims that the Commission erred in finding that Wilson's job search was reasonable and was made in good faith. As support, Imperial Palace points out that Wilson was officially released to return to work on May 19, 2003, but did not pursue any employment throughout May, June, July, or August of 2003. Imperial Palace also contends that the burden of proof should have been on Wilson because he did not make an attempt to return to work at Imperial Palace. Since we have already found that Wilson made an attempt to return to work, and Imperial Palace refused to hire him, Wilson has met the presumption of total disability, and the burden properly shifted to Imperial Palace to show that Wilson has suffered no reduction in earning capacity. "In such a posture, the employer may present evidence (if any) showing that the claimant's efforts to obtain other employment was a mere sham, or less than reasonable, or without proper diligence." Hale v. Ruleville Health Care Ctr., 687 *555 So.2d 1221, 1227 (Miss.1997) (citations omitted).
¶ 21. As support, Imperial Palace cites Hale, and claims that the facts in the present case are similar to the facts in Hale. In Hale, a claimant's job search was found to be unreasonable and not diligent where the claimant began her job search only one month before her Commission hearing and where the claimant, when questioned as to her efforts, could only recall one other specific instance of searching for employment. Id. We find that the facts are notably different in the present case. The documentation presented clearly indicates that Wilson began his job search in earnest in September of 2003. The list provided by Wilson in mid-January of 2004 enumerated six attempts to locate employment between September 3, 2003, and October 6, 2003. In addition, twelve undated attempts to locate employment with specific companies were listed. Wilson's hearing before the Commission did not occur until February 11, 2004. Therefore, the record is clear that Wilson's initial attempts to locate employment began more than four months prior to his hearing, unlike the claimant in Hale, who began her job search only one month before her hearing.
¶ 22. At the hearing, Wilson explained that he included specific dates only for the contacts that he was certain of. He testified that, although he was certain he had contacted the other potential employers, he did not know specifically on what dates he had done so. Wilson also testified that he made additional contacts other than those listed on the document given to Imperial Palace prior to the hearing.[3] Furthermore, Wilson listed specific dates in mid-January when he had followed up on some of the contacts. When questioned by Imperial Palace's attorney at the hearing as to why he had not followed up sooner on the employment contacts, Wilson explained: "I was told by most of the people . . . that I would be gotten in touch with, and to not make them mad, no, I didn't go back and follow up then, but I have probably made them mad now because I have really been following up on them, you know."
¶ 23. Imperial Palace also claims that Wilson's claim should fail for failure to provide "medical proof of such disability." As support, Imperial Palace cites Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (Miss.1978), where the Mississippi Supreme Court found that a claimant had made out a prima facie case for permanent total disability. In so finding, the court noted that "[m]edical proof in the record shows that claimant has a permanent disability rendering her functionally disabled. . . ." Id. However, in Morris v. Lansdell's Frame Co., 547 So.2d 782, 785 (Miss.1989) (citing Hall of Miss., Inc. v. Green, 467 So.2d 935, 938 (Miss.1985)), the Mississippi Supreme Court held: "Disability need not be proved by medical testimony so long as there is medical testimony which will support a finding of disability." Furthermore, in this case, although Dr. Lowry indicated that Wilson could return to work with restrictions, Dr. Lowry also made a finding that Wilson had a twenty-percent *556 permanent partial impairment as a result of his injury. Therefore, there was medical evidence regarding Wilson's disability. Under Mississippi law, Imperial Palace's failure to rehire Wilson, combined with his inability to find employment after a diligent search, raises a presumption that Wilson has been totally disabled. The burden is on Imperial Palace to prove otherwise.
¶ 24. Substantial evidence exists to support the Commission's finding. Therefore, the Commission was not clearly erroneous, and this assignment of error is without merit.
4. Vocational Expert
¶ 25. In its final contention of error, Imperial Palace claims that the Commission erred in not requiring Wilson to work with Sanders, Imperial Palace's vocational expert. As support, Imperial Palace notes that other jurisdictions have allowed termination of a claimant's benefits when the claimant refused to cooperate with a vocational expert. Imperial Palace argues that, at a minimum, Wilson's refusal to cooperate with Sanders should weigh against Wilson's diligence in seeking employment.
¶ 26. Because the Mississippi Supreme Court has not yet addressed this question, we fail to see how the Commission could be clearly erroneous for failing to terminate Wilson's benefits. Furthermore, we note that Imperial Palace's expert was retained on January 15, 2004, less than a month before the scheduled hearing in the matter. Under such circumstances, the Commission was not clearly erroneous for finding that Wilson's job search was diligent, despite his refusal to work with the expert. Wilson's attorney made it clear during Sanders' deposition that Wilson had refused to meet with Sanders due to the short amount of time before Wilson's hearing.
¶ 27. This contention of error is also without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] For example, Dr. Lowry said that Wilson should not lift bags of coins at work, and instead should be given a cart to transport coins.
[2] As discussed earlier in this opinion, a claimant must report back to his employer in order to activate a presumption that a partial disability is in fact a total permanent disability. McNeese, 627 So.2d at 325 (quoting Jordan, 600 So.2d at 183).
[3] The transcript of the hearing indicates that Wilson would have testified regarding the specifics of those contacts if he had been allowed to. However, repeated objections by Imperial Palace's attorney precluded such testimony. Imperial Palace claimed that Wilson could not testify about any job search efforts outside of those detailed in the list given to Imperial Palace, and the administrative judge finally told Wilson's attorney: "Well, but you're going to get repeated objections from [Imperial Palace's attorney], and frankly I think [the documentation given to Imperial Palace] is a good recapitulation of what he did that you don't need to elaborate on. . . ."